**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
ANDREW Q. KRAFT,

                                        Plaintiff,                  **COMPLAINT**

      -against-                                                     Docket No.

THE ARENA GROUP HOLDINGS INC. and         **JURY TRIAL**
MANOJ BHARGHAVA,                                     **DEMANDED**

                                          Defendants.
------------------------------------------------------------------X

        Plaintiff Andrew Q. Kraft, by his attorneys, Rosenberg Fortuna & Laitman, LLP, as and for his Complaint against Defendants The Arena Group Holdings Inc. and Manoj Bharghava, respectfully alleges as follows:

        **A.**        **Nature of the Case**

        1.        Plaintiff Andrew Q. Kraft capably and faithfully executed his duties as the Chief Operating Officer and later President of Defendant The Arena Group Holdings Inc. The terms of Plaintiff's employment—including his compensation (both as COO and later as President) and the severance, bonus, equity interests, stock options and benefits to which he is entitled—were the product of duly executed and authorized written agreements between Plaintiff and Defendant The Arena Group Holdings Inc. When Defendant The Arena Group Holdings Inc terminated Plaintiff's employment without cause on December 5, 2023, there arose a corresponding obligation on the part of said Defendant to pay Plaintiff severance and other compensation attendant to the "without cause" termination of his employment, as set forth in these agreements. Defendant Manoj Bhargava induced defendant The Arena Group Holdings, Inc. to breach the employment agreement by causing The Arena Group Holdings Inc. to refrain from paying the severance payments, salary continuation, stock options, COBRA benefits and other compensation to which Plaintiff is entitled

under the employment agreement. In public facing communications and a corporate filing in the immediate wake of Kraft's termination, The Arena Group Holdings Inc. represented that Kraft' termination was without cause. It was not until weeks later that it spuriously purported to claim—without corroboration—that Kraft was terminated "for cause", in a transparent ploy to avoid its monetary obligations to Plaintiff. Unfortunately, Defendants have made it abundantly clear to Plaintiff that they do not intend to honor The Arena Group Holdings Inc.'s contractual obligations to Plaintiff. Plaintiff seeks judicial relief so that the agreements may simply be enforced as written.

### B. The Parties

2. Plaintiff Andrew Q. Kraft ("**Kraft**") is a citizen of the State of New Jersey residing in the County of Somerset, State of New Jersey.

3. Defendant The Arena Group Holdings Inc (hereinafter the "**Arena Group**" or the "**Company**") is a corporation organized under the laws of Delaware with its headquarters and place of business located at 200 Vesey Street, 24th Floor, New York, New York 10281.

4. Upon information and belief defendant Manoj Bhargava ("**Bhargava**") is a citizen and resident of the State of Michigan with a residence located in Farmington Hills, Michigan.

### C. Jurisdiction and Venue

5. This Court has jurisdiction over this action pursuant to 28 USC 1332(a)(1) in that this is a civil action between a corporation with a place of business located in the State of New York, and a citizen of the State of New Jersey and a citizen of the State of Michigan, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6. Venue is proper in this district under 28 USC 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred within the Southern

District of New York.

## D. Facts

### (i) The Employment Agreement

7. Kraft commenced his employment with The Maven Inc. (the predecessor to the Arena Group) in or about December 2018 as its Chief Revenue Officer.

8. Kraft, then the Chief Operating Officer, entered into an Amended and Restated Executive Employment Agreement, with The Maven Inc. effective as of January 1, 2021 (said agreement, together with the Amendment and the Agreement (both as hereinafter defined below), hereinafter referred to collectively as the "**Employment Agreement**").

9. Pursuant to the Employment Agreement, Kraft was entitled to an annualized salary of $380,000, to be increased by not less than 5% per annum commencing January 1,2022.

10. Kraft was in fact given raises in January 2022, January 2023 and August 2023.

11. Pursuant to the Employment Agreement, Kraft was eligible to receive a $220,00 annual bonus upon 100% attainment of certain performance metrics agreed upon with the CEO by the end of January each calendar year (the "**Annual Bonus**").

12. Pursuant to the Employment Agreement, The Maven Inc. granted Kraft options to purchase shares of the Company's common stock, common restrictive stock units or restricted stock awards pursuant to the Company's 2019 Equity Incentive Plan.

13. The Employment Agreement further provided the compensation to which Kraft was entitled in the event the Company terminated his employment without cause.

14. Pursuant to the Employment Agreement, if Kraft's employment with Company is terminated by Company without Cause or by Executive for Good Reason, then Kraft shall be eligible to: (i) receive severance in the amount equal to 100% of the sum of Kraft's Annual Salary

and the Annual Bonus imputed at 100% goal attainment (less all withholdings and applicable deductions) ("**Severance Payment**"); (ii) receive payment for earned bonuses pursuant to the bonus targets referenced in Section 1.2(b) ("**Bonus Payment**").

15. Furthermore, pursuant to the Employment Agreement, if Kraft's employment with Company was terminated by Company without cause or by Kraft for Good Reason then, if Kraft timely and properly elects health continuation coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("**COBRA**"), the Company shall reimburse Kraft for the monthly COBRA premium paid by Kraft for Kraft and Kraft's dependents.

16. Additionally, the Employment Agreement provided in the event of the "without cause" termination of his employment, notwithstanding the terms of the Plan or any applicable award agreements, all outstanding unvested stock options, restricted stock awards, restricted stock units or stock appreciation rights granted to Kraft shall become fully vested and exercisable for the remainder of their full term and the Company shall if requested by Kraft be responsible for remitting all taxes payable by Kraft on Kraft's behalf and Kraft shall forfeit a number of shares under each such award with a fair market value equal to such payments made on Kraft's behalf ("**Equity Acceleration**").

17. The Employment Agreement provided that any right of Kraft to the Severance Payment, COBRA Payment and Equity Acceleration shall be contingent on Kraft signing, not revoking and complying with a standard form of release agreement with the Company (which release shall not include any restrictions on post-termination activities other than those referenced within this Agreement).

18. The Employment Agreement also furnished Company the right to terminate Kraft for "Cause".

19. The Employment Agreement defined what constitutes "Cause" for purposes

4

of the termination of Kraft's employment.

20. The Employment Agreement further specified certain procedures to be followed by the Company—including written notice that Kraft was terminated for "Cause", setting forth the termination date, reasonable detail of the circumstances claimed to provide a basis for a "Cause" termination, and in certain instances, the opportunity to cure, in connection with Company's right to terminate Kraft's employment for "Cause".

21. On or about September 21, 2021, The Maven Inc. was renamed The Arena Group Holdings Inc.

22. On or about February 11, 2022, The Arena Group Holdings Inc. stock was "uplisted" to the NYSE-American.

23. By First Amendment to Amended and Restated Executive Employment Agreement (the "**Amendment**"), Kraft and Arena Group amended the Employment Agreement effective August 1, 2023.

24. At the time of the Amendment, Arena Group was considering not less than three possible transactions pursuant to which The Arena Group would be acquired, and thus the Board desired to "lock in" the employment of key executives including Plaintiff irrespective of any transaction.

25. Pursuant to the Amendments, the Employment Agreement was amended to reflect that Kraft was promoted to the title of President, Operations.

26. Pursuant to the Amendment, the Employment Agreement was amended to state that Kraft shall receive an annualized salary of $500,000 (the "Annual Salary").

27. Pursuant to the Amendment, the Employment Agreement restated the stock option grant to which Kraft was entitled as follows:

>Stock Option Grant. Company will grant to Executive options to purchase shares of Company's Common Stock, restricted stock units or restricted stock awards (collectively, "**New Options**") pursuant to Company's 2019 Equity Incentive Plan (the "**Plan**") subject to the conditions described therein. The type and number of New Options and the terms associated with vesting and accelerated vesting of the New Options shall be upon agreement by the Board and CEO.

28. Pursuant to the Amendment, the Employment Agreement was amended to revise the Annual Bonus to which Kraft was eligible as follows:

>Annual Bonus. For each fiscal year of Executive's employment, Executive shall be eligible to receive a $500,000 annual bonus ("**Annual Bonus**"), to be made in quarterly payments of $125,000 at 100% attainment of performance metrics to be agreed upon with the CEO by the end of January in each calendar year ("**Quarterly Payments**").

29. The Amendment provided that except as otherwise provided in the Amendment, each of the terms and provisions of the Employment Agreement remained in full force and effect.

30. Kraft's salary increase and title promotion were approved by the Compensation Committee of the Company's Board.

**(ii) The Increase in Kraft's At-Will Termination Compensation in Exchange for Kraft's Waiver of the Right to Resign for Good Reason upon a Change in Control**

31. Kraft and other executives of the Company devoted significant efforts in 2023 to seeking out an investor for the Company.

32. Kraft helped grow revenue in 2023 from -$100 million to over $250 million and EBITDA from -$35 million to on track to be $15 million as of the date of Kraft's termination.

33. In 2023. Company commenced discussions with Simplify Innovations Capital ("SIC") and its owner, Bhargava, concerning a potential investment in the Arena Group.

34. In August 2023, Bhargava, a businessman who founded the caffeine beverage brand 5-Hour Energy, through his entity, SIC, signed a letter of intent to acquire a majority stake approximately 65% in the Arena Group through SIC.

35. SIC planned to acquire certain assets of the Arena Group. As part of the deal Arena Group would receive a $50 million cash investment, plus other assets of SIC which would be merged into Arena Group—specifically the assets known as Bridge Media.

36. Since the Company was exploring options which could result in a Change in Control of the Company, the Company entered into an agreement with Kraft (and with other executives of the Company to Kraft's understanding) to secure Kraft's waiver of his right to resign from his employment for "Good Reason" (which would entitle him to certain employment-separation compensation) in the event of a "Change in Control", as that term was defined in the Stock Plan.

37. Specifically, by Agreement executed by Kraft on August 13, 2023 (the "**Agreement**") Kraft and Arena Group agreed that in the event Kraft's employment was terminated by the Company without cause or by Kraft for a Good Reason within 24 months following a Change in Control (as defined in the stock plan), Kraft shall be entitled to receive an amount equal to 12 months annual salary ("**Severance Payment**").

38. Pursuant to the Agreement, the Severance Payment shall be payable as salary continuation (less all applicable tax withholdings and deductions) over a 12- month period and accordance with the Company's regular payroll schedule.

39. Pursuant to the Agreement, any right of Kraft to the Severance Payment was contingent on Kraft signing, not revoking and complying with a standard form of release agreement with Arena Group (which release shall not include any restrictions on post- termination

activities other than those referenced within the Agreement).

40. The Agreement explicitly stated that "for purposes of clarity, this severance payment shall be *in addition to* any payments and benefits to which Kraft is eligible under section 1.3(c) of the Employment Agreement" (emphasis supplied).

41. As consideration for the foregoing, the Agreement provided that Kraft shall waive any right to resign for Good Reason under sections 1.5(h)(ii) and 1.5(h)(iv) of the Employment Agreement for any actions that occurred prior to and including the date of any Change in Control.

42. The terms of the Agreement were approved by the Compensation Committee of the Company's Board.

### (iii) Bhargava's Inducement of Arena Group's Breach of the Employment Agreement

43. In November 2023, the Arena Group announced that it had signed a definitive agreement under which the Company will combine with Bridge Media Networks, LLC ("**Bridge Media Networks**"), a wholly owned subsidiary of Simplify. Kraft (along with Arena Group's general counsel) was one of the chief negotiators of the agreement.

44. Additionally, on November 30, 2023, Bhargava purchased Arena Group shares and debt giving Bhargava 44 percent control of the Arena Group.

45. The Compensation Committee of the Company approved a $300,000 bonus to Kraft to be paid upon closing of the business combination agreement with Simplify Inventions LLC.

46. On December 5, 2023, without notice and without authority, Bhargava— then only a minority shareholder of Arena Group—directed Mr. Grady Trip ("**Trip**"), the Arena

Group's Head of Human Resources, to terminate Kraft's employment.

47. The termination violated Arena's by-laws and Delaware law, which require that executive officers be terminated either by the CEO or by board resolution—not by a unilateral action by a minority shareholder.

48. There was no board resolution to fire Kraft (an executive officer), nor was a board meeting held to discuss the termination until well after the action was taken. No unanimous written consent was executed.

49. Trip advised Kraft the Company was "heading in a different direction for the COO role" and that Kraft was terminated "effective immediately".

50. Kraft asked Trip if the termination was for "Cause" and Trip responded "No".

51. At that time, upon information and belief, Bhargava was purporting to act as the Company's CEO even though he had never been officially appointed as such by the Company's Board of Directors, as the Board did not appoint Bhargava as interim CEO until December 11, 2023. Bhargava had somehow managed to take over the Company without Board approval.

52. Upon information and belief, the termination of Kraft's employment took place without the authorization of the actual CEO, Ross Levinsohn, and without a formal Board action, when Board governance required that the termination had to be done by the CEO and with a Board action.

53. Mr. Levisohn has separately confirmed that the termination was without his authorization.

54. Levisohn's employment was terminated in December 2023, shortly after

Kraft's employment was terminated.

55. In a public statement to a media outlet, Company classified Kraft's termination as part of an "overall reorganization plan".

56. Additionally, in the Company's Form 8-K—a "current report" required by the Securities and Exchange Commission and federal securities law for public companies to notify shareholders of certain events—the Company did not classify Kraft's termination as for "Cause" in reporting that his employment had been terminated. The Form 8K bore a reporting date of December 5, 2023.

57. All performance metrics for the attainment of Kraft's Annual Bonus were agreed to with Levinsohn, the Arena Group's CEO, who confirmed that Kraft satisfied these metrics.

58. Kraft's requests in December 2023 of Trip to be provided the Company's standard form release agreement—the release agreement to be executed pursuant to the Employment Agreement in the case of a "without cause" termination, and Kraft's requests for guidance on the payment of the Severance Payment and other separation compensation to which he was entitled, were met with silence from the Company.

59. It was not until weeks later, late in the evening on December 28, 2023 (via a letter backdated to December 21, 2023), that Bhargava, as purported "Interim CEO" of Arena Group, alleged for the first time that Arena Group had terminated Kraft's employment for "Cause" pursuant to Section 1.3(b)(i) of the Employment Agreement due to "actions surrounding [the Amendment] and [the Agreement], which included your communications with and representations to the Compensation Committee of the Company's Board of Directors regarding such agreements".

60. The backdated letter did not state which of the grounds of "Cause" as defined in the Employment Agreement that Arena Group was falsely accusing Kraft of having committed. Nor did it provide "reasonable detail" of the circumstances claimed to constitute the basis for the "Cause" termination.

61. To date, Arena Group has not paid Kraft the Severance Payment, salary continuation, and other compensation, stock options, restricted stock units and benefits to which Kraft is entitled under the Employment Agreement for the termination of Kraft's employment "without cause".

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Employment Agreement against The Arena Group)

62. Plaintiff repeats and realleges each and every allegation contained in the paragraphs set forth above as if more fully set forth at length herein.

63. The Employment Agreement constituted a valid and subsisting agreement between Kraft and the Arena Group.

64. Kraft performed all of the terms of the Employment Agreement to be performed on his part.

65. The Arena Group has breached the Employment Agreement in that it has failed to pay Kraft the Severance Payment, Annual Bonus, salary continuation, stock options, restricted stock units, Cobra benefits and other compensation and benefits to which Kraft is entitled under the Employment Agreement in the case of the termination of his employment without cause.

66. As a result of the foregoing, Kraft has been damaged by the Arena Group in an amount not presently ascertainable, but in any event not less than: (a) $1,000,000 due under the Employment Agreement, representing one year of his Annual Salary of $500,000 together with

his Annual Bonus of $500,000; (b) $375,000 for Q1, Q2, and Q3 of his 2023 Annual Bonus for completion of all goals as set by the then-CEO Ross Levinsohn as per the Employment Agreement; (c) $500,000 due under the Agreement representing one year of his annualized salary in addition to the severance provided for in the Employment Agreement to be paid as salary continuation; (d) $300,000 representing Kraft's bonus approved by the Compensation Committee of the Company to be paid upon closing of the business combination agreement with Simplify Inventions LLC; (e) payment of Kraft's COBRA premiums for up to 18 months following his termination (and reimbursement of said COBRA premiums paid to date by Kraft); and (f) full vesting and extension of time to exercise for all stock options which have been granted to Kraft to date, as well as the full vesting and immediate release/transfer of RSUs to Kraft such that they may be immediately available to him to sell.

67. As a result of the foregoing, Kraft is entitled to judgment against The Arena Group in an amount not presently ascertainable, but in any event not less than: (a) $1,000,000 due under the Employment Agreement, representing one year of his Annual Salary of $500,000 together with his Annual Bonus of $500,000; (b) $375,000 for Q1, Q2, and Q3 of his 2023 Annual Bonus for completion of all goals as set by the then-CEO Ross Levinsohn as per the Employment Agreement; (c) $500,000 due under the Agreement representing one year of his annualized salary in addition to the severance provided for in the Employment Agreement to be paid as salary continuation; (d) $300,000 representing Kraft's bonus approved by the Compensation Committee of the Company to be paid upon closing of the business combination agreement with Simplify Inventions LLC; (e) payment of Kraft's COBRA premiums for up to 18 months following his termination; and (f) full vesting and extension of time to exercise for all stock options which have been granted to Kraft to date, as well as the full vesting and immediate release/transfer of RSUs to

Kraft such that they may be immediately available to him to sell, together with statutory pre-judgment interest thereon and the costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Tortious Interference with Contract against Bhargava)

68. Plaintiff repeats and realleges each and every allegation contained in the paragraphs set forth above as if more fully set forth at length herein.

69. Bhargava was aware of the existence of the Employment Agreement between Kraft and Arena Group.

70. Bhargava tortiously interfered with the Employment Agreement in directing Arena Group to terminate Kraft without Board approval in contravention of Arena's by-laws and Delaware law, causing Arena Group Holding Inc to refrain from paying Kraft the Severance Payment, salary continuation, Annual Bonus, stock options, restricted stock units, COBRA benefits and other compensation and benefits to which Kraft is entitled under the Employment Agreement for the "without cause" termination of his employment.

71. Cavitt Randall—a Board member of Arena and also an employee of companies under the control of Bhargava—stated to Kraft that Bhargava will "never approve" the payout of Kraft's severance in the amount set forth in the Employment Agreement.

72. As a result of the foregoing, Kraft has been damaged by the Arena Group in an amount not presently ascertainable, but in any event not less than: (a) $1,000,000 due under the Employment Agreement, representing one year of his Annual Salary of $500,000 together with his Annual Bonus of $500,000 to be paid upon signing of the Release; (b) $375,000 for Q1, Q2, and Q3 of his 2023 Annual Bonus for completion of all goals as set by the then-CEO Ross Levinsohn as per the Employment Agreement; (c) $500,000 due under the Agreement representing one year

of his annualized salary in addition to the severance provided for in the Employment Agreement to be paid as salary continuation; (d) $300,000 representing Kraft's bonus approved by the Compensation Committee of the Company to be paid upon closing of the business combination agreement with Simplify Inventions LLC; (e) payment of Kraft's COBRA premiums for up to 18 months following his termination (and reimbursement of said premiums paid to date by Kraft); and (f) full vesting and extension of time to exercise for all stock options which have been granted to Kraft to date, as well as the full vesting and immediate release/transfer of RSUs to Kraft such that they may be immediately available to him to sell.

73. As a result of the foregoing, Plaintiff is entitled to judgment against Bhargava in an amount not presently ascertainable, but in any event not less than: (a) $1,000,000 due under the Employment Agreement, representing one year of his Annual Salary of $500,000 together with his Annual Bonus of $500,000; (b) $375,000 for Q1, Q2, and Q3 of his 2023 Annual Bonus for completion of all goals as set by the then-CEO Ross Levinsohn as per the Employment Agreement; (c) $500,000 due under the Agreement representing one year of his annualized salary in addition to the severance provided for in the Employment Agreement to be paid as salary continuation; (d) $300,000 representing Kraft's bonus approved by the Compensation Committee of the Company to be paid upon closing of the business combination agreement with Simplify Inventions LLC; (e) payment of Kraft's COBRA premiums for up to 18 months following his termination; and (f) full vesting and extension of time to exercise for all stock options which have been granted to Kraft to date, as well as the full vesting and immediate release/transfer of RSUs to Kraft such that they may be immediately available to him to sell.

74. Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff respectfully prays for judgment against Defendants as

follows:

        i.      On the first cause of action, against defendant The Arena Group Holdings Inc. in an amount not presently ascertainable, but in any event not less than: (a) $1,000,000 due under the Employment Agreement, representing one year of his Annual Salary of $500,000 together with his Annual Bonus of $500,000; (b) $375,000 for Q1, Q2, and Q3 of his 2023 Annual Bonus for completion of all goals as set by the then-CEO Ross Levinsohn as per the Employment Agreement; (c) $500,000 due under the Agreement representing one year of his annualized salary in addition to the severance provided for in the Employment Agreement to be paid as salary continuation; (d) $300,000 representing Kraft's bonus approved by the Compensation Committee of the Company to be paid upon closing of the business combination agreement with Simplify Inventions LLC; (e) payment of Kraft's COBRA premiums for up to 18 months following his termination (and reimbursement of said premiums paid to date by Kraft); and (f) full vesting and extension of time to exercise for all stock options which have been granted to Kraft to date, as well as the full vesting and immediate release/transfer of RSUs to Kraft such that they may be immediately available to him to sell;

        ii.      On the second cause of action, against defendant Manoj Bhargava in an amount not presently ascertainable, but in any event not less than: (a) $1,000,000 due under the Employment Agreement, representing one year of his Annual Salary of $500,000 together with his Annual Bonus of $500,000; (b) $375,000 for Q1, Q2, and Q3 of his 2023 Annual Bonus for completion of all goals as set by the then-CEO Ross Levinsohn as per the Employment Agreement; (c) $500,000 due under the Agreement representing one year of his annualized salary in addition to the severance provided for in the Employment Agreement to be paid as salary continuation; (d) $300,000 representing Kraft's bonus approved by the Compensation Committee of the Company

to be paid upon closing of the business combination agreement with Simplify Inventions LLC; (e) payment of Kraft's COBRA premiums for up to 18 months following his termination (and reimbursement of said premiums paid to date by Kraft); and (f) full vesting and extension of time to exercise for all stock options which have been granted to Kraft to date, as well as the full vesting and immediate release/transfer of RSUs to Kraft such that they may be immediately available to him to sell; and

        iii.    On all causes of action, statutory pre-judgment interest pursuant to New York law (CPLR 5001-CPLR 5004) and the costs and disbursements of this action.

Dated: Garden City, New York
       April 8, 2024

**ROSENBERG FORTUNA & LAITMAN, LLP**

By: s/Anthony R. Filosa
_____

**ANTHONY R. FILOSA**
**ARTHUR S. LAITMAN**
Attorneys for **Plaintiff**
666 Old Country Road, Suite 810
Garden City, New York 11530
(516) 228-6666