USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/27/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDREW Q. KRAFT,

                Plaintiff,

-v-

THE ARENA GROUP HOLDINGS INC., MANOJ BHARGAVA,

                Defendants.

---

THE ARENA GROUP HOLDINGS INC.,

                Counter Claimant,

-v-

ANDREW Q. KRAFT,

                Counter Defendant.

24-cv-2619 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Andrew Q. Kraft ("Plaintiff" or "Kraft") brings claims for breach of contract ("Count I") against The Arena Group Holdings Inc. ("Arena") and tortious interference with contract ("Count II") against Manoj Bhargava ("Bhargava"). Dkt. No. 7. Bhargava moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Count II of the complaint. Dkt. No. 25.

For the following reasons, Bhargava's motion to dismiss is granted.

## BACKGROUND

For purposes of the motion to dismiss, the Court assumes the truth of the complaint's well-pleaded allegations.

Arena is a Delaware corporation with its headquarters and place of business in New York, New York.  Dkt. No. 7 ¶ 3.  Plaintiff was Arena's Chief Operating Officer and later its President.  *Id.* ¶¶ 1, 8, 25.  Bhargava is a businessman who owns a company named Simplify Innovations Capital ("SIC").  *Id.* ¶ 33.

Plaintiff began his employment with Arena's predecessor, The Mavin Inc., in or about December 2018 as its Chief Revenue Officer.  *Id.* ¶ 7.  Effective January 1, 2021, Plaintiff, then the Chief Operating Officer, entered into an Amended and Restated Executive Employment Agreement, with The Maven, Inc. (the "Employment Agreement").  *Id.* ¶ 8; Dkt. No. 27-1.[1]  Plaintiff's employment was "at-will."  Dkt. No. 27-1 at 4.  Either The Maven Inc. or Plaintiff could terminate his employment for any reason or no reason at all.  *Id.* at 4–6.  The Employment Agreement entitled Plaintiff to an annualized salary and to an annual bonus based upon 100% attachment of certain performance metrics agreed upon with the CEO by January of each calendar year.  Dkt. No. 7 ¶¶ 9, 11; Dkt. No. 27-1 at 2–3.  Plaintiff was also granted options to purchase shares of The Mavin Inc.'s common stock, common restrictive stock units, or restricted stock awards pursuant to The Mavin Inc.'s 2019 Equity Incentive Plan.  Dkt. No. 7 ¶ 12; Dkt. No. 27-1 at 3.  In addition, the Employment Agreement entitled Plaintiff to certain severance benefits if his employment was terminated by his employer without "Cause" or by him for "Good Reason."  Dkt. No. 7 ¶¶ 13–16; Dkt. No. 27-1 at 4–7.

Effective August 1, 2023, the Employment Agreement was amended and Plaintiff was promoted to the title of President, Operations.  Dkt. No. 7 ¶ 25.

---

[1] Although Plaintiff did not attach the Employment Agreement to his complaint, the Court may nevertheless consider the Employment Agreement as integral to the complaint because Plaintiff's complaint "relies heavily upon its terms and effect."  *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 68 (2d Cir. 2008); *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Diaz-Roa v. Hermes L., P.C.*, 2024 WL 4866450, at *1 (S.D.N.Y. Nov. 21, 2024).

In 2023, Arena commenced discussions with SIC and Bhargava concerning a potential investment in Arena.  *Id.* ¶ 33.  In August 2023, Bhargava signed a letter of intent on behalf of SIC for SIC to acquire a majority stake of approximately 65% in Arena.  *Id.* ¶ 34.

In November 2023, Arena announced that it had signed a definitive agreement to merge with a wholly-owned subsidiary of SIC named Bridge Media Networks, LLC ("Bridge Media Networks").  *Id.* ¶ 43.  Additionally, on November 30, 2023, Bhargava purchased Arena shares and debt to give him 44% control of Arena.  *Id.* ¶ 44.

On December 5, 2023, Bhargava directed Grady Trip ("Trip"), Arena's Head of Human Resources, to terminate Plaintiff's employment.  *Id.* ¶ 46.  At the time, there was no board resolution to fire Plaintiff, no board meeting was held to discuss his termination, and no unanimous written consent was executed.  *Id.* ¶ 48.  Trip advised Plaintiff that Arena was "heading in a different direction for the COO role" and that Plaintiff's termination was "effective immediately." *Id.* ¶ 49.  Kraft asked Trip if the termination was for "cause" and Trip responded "No."  *Id.* ¶ 50. Plaintiff alleges upon information and behalf that Bhargava was at the time purporting to act as Arena's Chief Executive Officer ("CEO"), but that the Board did not appoint him interim CEO until December 11, 2023. *Id.* ¶ 51.  Plaintiff further alleges upon information and belief that Bhargava terminated Plaintiff's employment without the authorization of the actual CEO, Ross Levinsohn, and without a formal Board action.  *Id.* ¶¶ 52–53.

Around that time, Arena also outwardly represented that Plaintiff's termination was without Cause.  In a public statement to a media outlet, Arena described Plaintiff's termination as part of an "overall reorganization plan.  *Id.* ¶ 55.  In a Form 8-K filed on December 5, 2023, Arena did not classify Kraft's termination as for cause.  *Id.* ¶ 56.

In December 2023, Kraft asked Trip for Arena's standard form release agreement which was to be executed pursuant to the employment agreement in the event of a "without cause" termination and for guidance on the payment of the Severance Payment and other separation compensation. *Id.* ¶ 58. Those requests were met with silence. *Id.*

Late in the evening of December 28, 2023, Bhargava, acting as purported Interim CEO of Arena, stated that Kraft's employment had been terminated for "Cause" pursuant to Section 1.3(b)(i) of the Employment Agreement. *Id.* ¶ 59. The letter was backdated to December 21, 2023. *Id.*

Arena has not paid Kraft the Severance Payment, salary continuation, and other compensation, stock options, restricted stock units and benefits to which he would be entitled based on the termination of his employment "without cause." *Id.* ¶ 61; Dkt. No. 27-1 at 4–7.

## PROCEDURAL HISTORY

Plaintiff initiated this case by complaint filed on April 9, 2024. Dkt. No. 7.[2] Arena answered the complaint on June 24, 2024, and filed counterclaims against Kraft. Dkt. No. 17. Kraft answered the counterclaims on July 15, 2024. Dkt. No. 24.

On July 16, 2024, Bhargava filed the instant motion to dismiss with a memorandum of law and a declaration in support of the motion. Dkt. Nos. 25–27. Plaintiff filed a memorandum of law in opposition to the motion to dismiss on August 16, 2024. Dkt. No. 31. Bhargava filed a reply memorandum of law in further support of the motion on September 4, 2024. Dkt. No. 32.

## LEGAL STANDARD

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor

---

[2] Plaintiff attempted to file the complaint on April 8, 2024, but it was rejected by the Clerk of Court due to a filing error. Dkt. No. 1.

4

of the plaintiff.  *See Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004).  This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011) (same).

## DISCUSSION

Bhargava argues that the complaint does not state a claim for tortious interference with contract.  Dkt. No. 26 at 4–8.  He contends that the complaint is faulty due to its failure to allege that Bhargava used wrongful means to effect Plaintiff's termination or acted out of malice towards Plaintiff.  Bhargava further contends that he was not a third party to the contract when, as Interim CEO, he caused Arena to withhold Plaintiff's severance package.

Under New York law, tortious interference with contract requires several elements: the existence of a valid contract between the plaintiff and a thirty party, defendant's knowledge of said contract, defendant's international procurement of the third party's breach of the contract without

5

justification, actual breach of contract, and damages resulting from the breach. *See Lama Holding Co. v. Smith Barney*, 668 N.E.2d 1370, 1375 (N.Y. 1996).[3]

As currently pleaded, the complaint fails to state a claim for tortious interference against Bhargava. Plaintiff does not dispute that his employment was at-will. Dkt. No. 31 at 12. Under New York law, "a writing setting forth an employee's salary for a specific period does not bind the employer to retain the employee for any length of time." *Lamb v. Money Transfer Sys., Inc.*, 2013 WL 5216442, at *6 (W.D.N.Y. Sept. 16, 2013); *see also Keystone Auto. Indus., Inc. v. Montalvo*, 2014 WL 3696266, at *6 (E.D.N.Y. July 24, 2014) (Bianco, J.) (collecting cases); *Tyson v. Hess*, 487 N.Y.S.2d 206, 208 (4th Dep't 1985), *aff'd*, 489 N.E.2d 747 (N.Y. 1985). "New York law does not recognize a cause of action for the tort of abusive or wrongful discharge of an at-will employee, and this rule cannot be circumvented by casting the cause of action in terms of tortious interference with employment." *McHenry v. Lawrence*, 886 N.Y.S.2d 492, 494 (2d Dep't 2009).

A narrow exception to that general rule exists, but it is inapplicable here: Bhargava can be liable for tortious interference with contract in connection with the termination of Plaintiff's employment only if Plaintiff can establish that Bhargava "utilized wrongful means to effect his . . . termination." *Id.*; *see Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001). The standard is identical to that for intentional interference with prospective economic relations. *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 449 (N.Y. 1980); *Flaherty v. Dixon*, 2023 WL 2051861, at *7 (S.D.N.Y. Feb. 16, 2023). "[T]he plaintiff is required to show: '(1) the existence of a business relationship between the plaintiff and a thirty party; (2) the defendants' interference

---

[3] The parties proceed on the assumption that New York law applies to Plaintiff's tortious interference claim. Dkt. No. 26 at 4–8; Dkt. No. 31 at 11–16; Dkt. No. 32 at 1–6. The Court will accordingly evaluate the tortious interference claim under New York law. *See Diaz-Roa*, 2024 WL 4866450, at *37 (citing *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000); *Pac. Indem. Co. v. Kiton Corp.*, 2022 WL 4237092, at *2 (S.D.N.Y. Sept. 14, 2022)).

6

with that business relationship; (3) that the defendants acted with the sole purpose of harming plaintiff or used dishonest, unfair, improper or illegal means that amounted to a crime or an independent tort; and (4) that such acts resulted in the injury to the plaintiff's relationship with the third party.'" *McHenry*, 886 N.Y.S.2d at 494 (quoting *Schorr v. Guardian Life Ins. Co. of Am.*, 843 N.Y.S.2d 24 (1st Dep't 2007)); *see also Impellizzeri v. Campagni*, 194 N.Y.S.3d 637, 640 (4th Dep't 2023); *Conklin v. Laxen*, 118 N.Y.S.3d 893, 896 (4th Dep't 2020).

Plaintiff does not allege that Bhargava utilized wrongful means in connection with the termination of Plaintiff's employment. *See Shernoff v. Soden*, 266 F. App'x 12 (2d Cir. 2008) (to succeed on claim for tortious interference with terminable-at-will contract, the plaintiff must "show that the defendants acted unjustifiably or improperly"). For the claim to survive, a plaintiff "must establish that a third party used wrongful means to effect the termination such as fraud, misrepresentation, or threats, that the means used violated a duty owed by the defendant to the plaintiff, or that the defendant acted with malice." *Albert*, 239 F.3d at 274. "The implication is that, as a general rule, the defendant's conduct must amount to a crime or an independent tort." *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004); *see 106 N. Broadway, LLC v. Lawrence*, 189 A.D.3d 733, 741 (2d Dep't 2020). "Persuasion alone will not suffice." *Nelson v. Cap. Cardiology Assocs., P.C.*, 949 N.Y.S.2d 530, 533 (3d Dep't 2012); *see also Guardian Life*, 406 N.E.2d at 449; *Jabbour v. Albany Med. Ctr.,* 654 N.Y.S.2d 862, 865 (3d Dep't 1997). For economic pressure to amount to wrongful means of termination, the New York Court of Appeals has stated that the pressure must be "extreme and unfair." *Carvel*, 818 N.E.2d at 1105; *see also Shernoff*, 266 F. App'x at 13–14. Plaintiff does not allege Bhargava perpetuated any fraud, misrepresentation, or threat in procuring Plaintiff's termination. Nor does he allege that Bhargava acted with malice or breached any duty Bhargava owed Plaintiff.

7

Plaintiff alleges only that Bhargava, in his capacity as minority shareholder of Arena, directed the Head of Human Resources to terminate Plaintiff's employment without notice and without authority and that the termination violated Arena's bylaws and Delaware law. Dkt. No. 7 ¶¶ 46–47. But it is inherent in the tort of tortious interference that the third party lacked authority to effect the claimed breach of contract; that is what converts the claim from one of contractual breach to one of tortious interference. And the allegation that the termination violated Arena's by-laws and Delaware contract law may give rise to a claim by Arena's shareholders against the officers and directors of Arena who allegedly took the unlawful action, *see, e.g.*, *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 285 (Del. Ch. 2003), but it does not constitute an independent tort by Bhargava. Plaintiff therefore fails to plead that Bhargava obtained Plaintiff's termination through wrongful means.

Plaintiff rests his defense of the complaint solely on his allegations that that Bhargava procured "Arena's breach of the severance payment obligations of the [Employment] Agreement." Dkt. No. 31 at 12. That claim fails for different reasons. Plaintiff has not alleged facts to establish that Arena was in breach of the obligation to pay severance either at the time Bhargava directed Trip to terminate Plaintiff's employment or at the time Plaintiff's employment was terminated. To the contrary, Plaintiff affirmatively alleges that he was told at that time that his termination was not for Cause and that it was part of an overall reorganization plan. Dkt. No. 7 ¶¶ 50, 55–56. Plaintiff could not then have brought a claim for breach or anticipatory breach of Arena's severance obligations to him because Arena had not yet breached its obligations nor had it made a clear and unequivocal assertion that it would not honor its obligations. *See Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 705 N.E.2d 656, 659 (N.Y. 1998); *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 279 (2d Cir. 2004). Plaintiff's

allegations that Bhargava caused Arena to terminate Plaintiff's employment therefore do not establish that Bhargava also caused Arena to perpetuate the later alleged breach that was its refusal to pay Plaintiff's severance.

Plaintiff does allege that, "weeks later," on December 28, 2023, Bhargava "alleged for the first time that Arena . . . had terminated Kraft's employment for 'Cause.'" Dkt. No. 7 ¶ 59. At that time, from the complaint's allegations, there was a breach of contract or at least an anticipatory repudiation. *See Norcon Power*, 705 N.E.2d at 659 ("Such a discernible line in the sand clears the way for the nonbreaching party to broach some responsive action."). But the law of tortious interference requires interference by a third party. *See Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996) ("[A] plaintiff bringing a tortious interference claim must show that the defendants were *not parties to the contract*." (citing *Israel v. Wood Dolson Co.*, 134 N.E.2d 97, 99–100 (N.Y. 1956)). According to the complaint, by the time of Arena's alleged breach of its obligation to pay severance benefits, Bhargava was no longer a third party to the contract. By December 28, 2023, Bhargava was the Interim CEO of Arena. Dkt. No. 7 ¶¶ 55, 59.

"[T]he law in New York is that 'the existence of a plausible claim for breach of contract does not, without more, provide a basis for the assertion of a cause of action for interference with contractual relations against those corporate officers and directors whose actions brought about the asserted breach.'" *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 337 (S.D.N.Y. 2012) (quoting *Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 744 N.Y.S.2d 384, 390 (1st Dep't 2002)); *see also Craig v. First Web Bill, Inc.*, 2004 WL 2700128, at *9 (E.D.N.Y. Nov. 29, 2004) ("Generally, '[a] corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith as an officer (and did not commit)

9

independent torts or predatory acts directed at another.'" (quoting *Murtha v. Yonkers Child Care Ass'n, Inc.*, 383 N.E.2d 865, 866 (N.Y. 1978))). "In order to show that a defendant-employee is a 'third party,' a plaintiff must show that the defendant-employee has exceeded the bounds of his or her authority." *Finley*, 79 F.3d at 1295. Furthermore, "it must be alleged that defendant's conduct was motivated solely by malice or to inflict injury by unlawful means going beyond mere self-interest or other economic considerations." *Bradbury v. Israel*, 168 N.Y.S.3d 16, 18–19 (1st Dep't 2022); *see also Hassan v. Deutsche Bank A.G.*, 515 F. Supp. 2d 426, 430 (S.D.N.Y. 2007), *aff'd sub nom. Hassan v. Deutsche Bank AG*, 336 F. App'x 21 (2d Cir. 2009).

Plaintiff does not allege that Bhargava was acting outside the scope of his authority as Interim CEO in asserting that Plaintiff was terminated for "Cause" or that he committed independent tortious acts or acted purely from malice or self-interest. There is no allegation that Bhargava, as Interim CEO, lacked the authority to determine Arena's position with respect to the basis for Plaintiff's termination or whether Plaintiff was owed severance. Nor is there any allegation that any conduct in which Bhargava engaged was independently tortious. Although Plaintiff alleges that the reasons asserted for his termination were "false," Dkt. No. 7 ¶ 60, he does not allege that Bhargava lied or committed other misconduct in causing Arena to deny him his severance payments. *Compare Cohen v. Davis*, 926 F. Supp. 399, 404 (S.D.N.Y. 1996) (sustaining claim for tortious interference where plaintiff claimed "that the defendants made false and misleading reports about [plaintiff's] performance to convince [plaintiff's employer] to discharge her"). Finally, although Plaintiff asserts in his memorandum of law in opposition to the motion to dismiss that Bhargava had a personal pecuniary interest in causing Arena to deny him severance payments, Dkt. No. 31 at 16, that allegation appears nowhere in the complaint, nor are there facts asserted that would establish that claim. "[A] plaintiff may not amend his or her complaint 'by

10

asserting new facts or theories for the first time in opposition to . . . [a] motion to dismiss.'" *Rincon v. Covidien*, 2017 WL 2242969, at *2 (S.D.N.Y. May 22, 2017) (quoting *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)). "The conclusory allegations in the complaint establish, at most, that [Bhargava] might derive a financial benefit as a stockholder of [Arena], which is insufficient to establish that his predominant motive was to obtain an individual pecuniary benefit, rather than to advance the interests of the corporation." *Kats v. E. 13th St. Tifereth Place, LLC*, 900 N.Y.S.2d 362, 363 (2d Dep't 2010).[4]

In sum, Plaintiff fails to establish (1) that Bhargava procured the termination of Plaintiff's employment through wrongful means, or (2) even if Bhargava was responsible for the nonpayment of severance, that Bhargava acted outside the scope of his authority as Interim CEO such that he could be considered a third party to the Employment Agreement susceptible to liability for tortious interference. Plaintiff accordingly fails to state a claim of tortious interference as to Bhargava.

## CONCLUSION

Bhargava's motion to dismiss Count II of the complaint is GRANTED without prejudice. Plaintiff shall have thirty days from the date of this Opinion and Order to file an Amended Complaint.

---

[4] *Hoag v. Chancellor, Inc.*, 677 N.Y.S.2d 531 (1st Dep't 1998), upon which Plaintiff relies, is easily distinguishable. In that case, the individual defendants were deemed to have exceeded the scope of their respective authorities and to have acted for purely personal reasons when they caused the corporation that employed them to deprive the plaintiff of incentive compensation so that such compensation instead "would be distributed to the individual defendants." *Id.* at 534. The defendants in that case thus stood to gain in their personal capacity from the breach of contract. No similar allegation is made here.

11

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 25.

SO ORDERED.

Dated: December 27, 2024
      New York, New York

                                                  LEWIS J. LIMAN
                                     United States District Judge