UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

ANDREW Q KRAFT,

                    Plaintiff,

       -v-

THE ARENTA GROUP HOLDINGS,

                Defendant.

-------------------------------------------------------------------X

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: 04/23/2026 |

24-cv-2619 (LJL)

<u>MEMORANDUM &</u>
<u>ORDER</u>

LEWIS J. LIMAN, United States District Judge:

The Court assumes familiarity with this matter.  In brief, and as the parties have

described it, Plaintiff Andrew Kraft ("Plaintiff" or "Kraft") was a former executive officer of

Defendant The Arena Group ("Defendant" or "Arena") who has brought a claim against it for

breach of contract.  Dkt. No. 76-1.  He claims that Arena failed to provide him the severance

benefits to which he was entitled as an employee whose employment was terminated without

cause.  Arena has counterclaimed for breach of fiduciary duty and fraud.  Dkt. No. 66-7.  This

case is scheduled for trial on April 21, 2026.

The parties dispute two elements of the charge.  First, on Plaintiff's breach of contract

claim, the parties dispute which party has the burden of proof in demonstrating whether

Plaintiff's termination was for cause.  Second, on Defendant's breach of fiduciary duty

counterclaim, they dispute the standard that should be applied under New York law in

determining whether forfeiture of compensation is justified under the faithless servant doctrine.

The parties have submitted briefing on those questions of law.  Dkt. Nos. 78, 79.

    **I.**      **The Burden of Proof on the Breach of Contract Claim**

Kraft alleges that Arena breached his at-will Employment Agreement when it failed to pay him the severance package due for terminations without cause. Dkt. No. 7 ¶ 65. In its counterclaims, Arena asserts that Kraft was terminated for cause and therefore not entitled to the severance package contemplated in the Employment Agreement. Dkt. No. 17 ¶ 44. Kraft's breach of contract claim is contingent, then, upon a determination of whether or not his termination was for Cause. The parties dispute who has the burden to make the showing that the facts establish Cause exist. Plaintiff argues that the burden lies with Defendant. Dkt. No. 79 at 1. Arena, on the other hand, argues that because Plaintiff does not dispute the fact of his firing but contends only that Arena breached by not paying him severance, Plaintiff must prove the facts that establish he is entitled to severance, *i.e.*, that Cause did not exist. Dkt. No. 78 at 1.

The Court reads the Employment Agreement as a whole attempting to give meaning to every term. *See BOCA Aviation Ltd. v. AirBridgeCargo Airlines, LLC*, 669 F. Supp.3d 204, 223 (S.D.N.Y. 2023).[1] Section 1.3 of the Employment Agreement provides, in pertinent part: "Executive's employment hereunder shall commence on the Effective Date and shall continue until terminated earlier pursuant to Section 1.3(b) of this Agreement." Dkt. No. 78-2 § 1.3(a). Kraft's employment is defined to be "at-will." *Id.* § 1.3(a). According to the agreement, Kraft's employment "is not for any specified period of time and can be terminated by Executive or by Company at any time, and for any or no reason or cause." *Id.* Each of Arena and Kraft enjoyed an unqualified right to terminate the relationship between them. Arena "may terminate [Kraft's] employment at any time without Cause upon written notice to [Kraft]," *id.* § 1.3(b)(ii), and Kraft may terminate his employment with Arena upon thirty days written notice even without Good Reason, *id.* § 1.3(b)(v). The Agreement then sets out the manner in which the agreement may be

---

[1] The Employement Agreement is governed by New York law. *Id.* § 2.6.

terminated by each and the consequences that follow depending upon whether or not the agreement is terminated by Arena for Cause or by Kraft for "Good Reason."

Section 1.3(b)(ii) of Kraft's Employment Agreement provides that "Company may terminate Executive's employment at any time without Cause upon written notice to Executive, subject to Sections 1.3(c) and 1.3(d)." *Id.* § 1.3(b)(ii).  A termination without "Cause" gives rise to a right of Kraft and on obligation on the part of Arena to pay severance.  Section 1.3(c) provides that:

> If Executive's employment with Company is terminated by Company without Cause or by Executive for Good Reason, then Executive shall be eligible to: (i) receive severance in the amount equal to 100% of the sum of the Executive's Annual Salary and the Annual Bonus which would be received at 100% goal attainment (less all withholdings and applicable deductions) to be paid as salary continuation ("Severance Payment"); (ii) receive payment for earned bonuses pursuant to the bonus targets referenced in Section 1.2(b) ("Bonus Payment").

*Id.* § 1.3(c).

Section 1.3(b)(i) sets forth the manner in which Arena can terminate an executive for Cause:

> Company may terminate Executive's employment at any time for Cause upon written notice to Executive setting forth the termination date and, in reasonable detail, the circumstances claimed to provide a basis for termination pursuant to this Section 1.3(b)(i), without any requirement of a notice period and without payment of any compensation of any nature or kind; provided, however, that if the Cause is pursuant to subsections (i), (ii), (vi) or (vii) of the definition of Cause (appearing below), the CEO must give Executive the written notice referenced above within (30) days of the date that the CEO becomes aware or has knowledge of, or reasonably should have become aware or had knowledge of, such act or omission, and Executive will have thirty (30) days to cure such act or omission. Upon payment of the amounts set forth in Section 1.3(d), Executive shall not be entitled to any benefits or payments (other than those required under Section 1.3(d)).

*Id.* § 1.3(b)(i).  Cause as defined in the Employment Agreement includes the "Executive's engagement in dishonesty, illegal conduct, or willful misconduct, which is, in each case, materially and demonstrably injurious to Company or its Affiliates," and

"Executive's embezzlement, misappropriation, or fraud against Company or any of its Affiliates."  *Id.* § 1.5(e)(iii)–(iv).  The agreement does not provide for the payment of severance in the event of a termination for Cause.  Rather, if terminated for Cause, Kraft would be entitled only to the portion of his annual salary earned through the date of termination but not yet paid, any reimbursements owed to him, and any amount accrued arising from, or benefits from participating in, any employee benefit plan or program.  *Id.* § 1.3(d).[2]

On Kraft's side, he could terminate the agreement without breach only on 30 days' notice, and either with or without "Good Reason."  If Kraft terminated the Employment Agreement for "Good Reason," he would be entitled to severance and other benefits; if he terminated for a reason other than Good Reason, he would not be entitled to those benefits.  *Id.* § 1.3(b)(5).  Good Reason is defined as including (i) a "material reduction in Annual Salary or Target Bonus opportunity" (exempting a force majeure event), (ii) merger or sale of all or substantially all of the assets of the Company or any other Change in Control of the Company, (iii) material breach of the Employment Agreement, (iv) material diminution in the Executive's responsibilities, (v) requiring the Executive to take an illegal action, (vi) requiring the Executive to work more than two days a week outside of New York, and (vii) failure to pay compensation due.  *Id.* § 1.5(h).  Kraft is not required to identify the circumstances constituting "Good

---

[2] Arena need not give the employee any advance notice of the termination for Cause except where the cause is based on the Executive's "willful and continued failure to substantially perform the duties of Executive under this Agreement," the Executive's "willful and continued failure to comply with any valid legal directive of the Chief Executive Officer in accordance with this Agreement," the "Executive's violation of a material policy of Company that has been previously delivered to Executive in writing if such failure causes material harm to the Company," or the "Executive's material breach of any material obligation under this Agreement."  Dkt. No. 78-2 § 1.3(b)(i).  Arena has not argued in this litigation that it invoked those grounds for termination.

4

Reason."

,

The parties frame the question the Court must answer differently.  According to Plaintiff, courts must treat an employer's assertion that the employee was terminated for Cause as an affirmative defense, on which the employer bears the burden of proof.  Dkt. No. 79 at 2.  According to Defendant, whether or not Cause exists is a condition precedent to receipt of severance, which Kraft is required to prove.  Defendant has the better understanding of the law.  The lack of Cause is an element that Plaintiff is required to prove, by a preponderance, to show his entitlement to severance, which is only available where that condition is met.

"A contract imposes a condition precedent when it provides that an 'act or event' . . . 'must occur before a duty to perform a promise in the agreement arises.'"  *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 53 (2d Cir. 2011) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995)); *see Spencer-Smith v. Ehrlich*, 347 F.R.D. 606, 620 (S.D.N.Y. 2024) ("[I]n a run-of-the-mill breach of contract case . . . the plaintiff must have satisfied a condition precedent before any duty of the defendant to perform arises.").  "Where there is a condition precedent to performance, the party seeking to enforce the contractual obligation bears the burden of proving that the condition precedent is satisfied."  *Raymond v. Marks*, 116 F.3d 466, 466 (2d Cir. 1997); *accord Needham v. Candies, Inc.*, 2002 WL 1896892, at * 3 (S.D.N.Y. Aug. 16, 2002).

The delivery of written notice to Kraft in accordance with Section 1.3(b)(i) of the Employment Agreement is a condition precedent to Arena's right to terminate Kraft for

Cause.  In the absence of such written notice, the company's termination for Cause would not be effective.  *See Mark IV Indus., Inc. v. Kerns*, 2013 WL 12310665, at *8 (W.D.N.Y. July 18, 2013) (collecting cases that a notice provision is a condition precedent to contract termination).  Kraft would thus be deemed to have been terminated without Cause.

At the same time, however, the existence of Cause is not an element that Arena must establish before it terminates Kraft's employment.  Such termination is effective whenever written notice is provided to Kraft.  It need not be notice that conforms with Section 1(b)(i) and Cause need not, in fact, exist.  For that reason, Kraft cannot and does not challenge the termination of his employment.  Kraft alleges rather than Arena breached a separate and independent covenant—the covenant to pay him severance which arises only when that termination is without Cause.

Kraft's entitlement to severance arises under Section 1.3(c) of his Employment Agreement.  That provision states that "[i]f [Kraft's] employment with [Areana] is terminated by [Arena] without Cause," then Arena is required to pay severance and Kraft's earned bonuses.  *Id.* § 1.3(c)(i).  As phrased, the language is that of a classic condition precedent.  *See Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 306 (2d Cir. 2016) (recognizing that language "such as 'if,' 'on condition that,' provided that,' 'in the event that,' and 'subject to'" are conditions precedent).  "If" the condition is satisfied, then Arena is obligation to pay severance and earned bonuses.  And "if" the condition is not satisfied, Arena is not in breach andwould have no such obligation.  *See PRCM Advisers LLC v. Two Harbors Inv. Corp.*, 2021 WL 2582132, at *6 (S.D.N.Y. June 23, 2021) (defendant "had a contractual right to terminate

6

for cause," and thus "[t]o state a claim for breach of contract, PRCM must allege that" the basis for cause was not met); *Hahn v. OnBoard, LLC*, 2011 WL 4737058, at *7 (D.N.J. Oct. 5, 2011) (where defendant "was obligated to give plaintiff his severance package only if he was terminated without cause," "in this matter, termination without cause operates as a condition precedent to defendants' contractual obligations to vest plaintiff with the severance package").

The argument is further supported by construing the Employment Agreement as a whole. Section 1.3(c) treats indistinguishably termination by Arena without Cause and termination by Kraft "for Good Reason," as in either case Kraft would be entitled to the same severance. It follows from Kraft's argument that if Arena were required to prove the presence of Cause, it would also be required to prove the absence of Good Reason because the two are treated the same; both are triggers to Arena's obligation to pay severance. But that reading would make no sense. Good Reason is defined broadly under the Agreement to include nine different categories of actions, including not just a change in control, but also any material breach of the agreement by Arena, a material diminution or reduction in Kraft's responsibilities or duties, or any action that would require Kraft to violate federal or state law, etc. Dkt. No. 78-2 § 1.5(h). While the Employment Agreement requires Arena to give notice to Kraft of the circumstances giving rise to Cause, Kraft is under no such obligation as to Good Reason. If Arena bore the burden of proving absence of Good Reason, then, Arena would have to guess at the time of an Executive's departure whether the Executive had Good Reason or not and therefore whether it was obliged to pay severance. And, if it decided not to pay severance, in the face of the executive's silence it would be at risk of a lawsuit in which it

7

would have to go through each of the nine grounds listed in Section 1.5(h) and demonstrate their absence.  In effect, what is contractually set up as a conditional right to severance available only if the Executive left with Good Reason would become a virtual guarantee of that compensation regardless whether there was a good reason for departure.

Plaintiff's contrary argument that "Cause" operates as an affirmative defense as to which Arena has the burden is mistaken.  "An affirmative defense is a defense that 'will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true,' rather than [an] attack [on] the truth of the allegations, or a rebuttal of a necessary element of the claim."  *Utica Mut. Ins. Co. v. Munich Reinsurance Am. Inc.*, 7 F.4th 50, 63 (2d Cir. 2021) (quoting *Saks v. Franklin Convey Co.*, 316 F.3d 337, 350 (2d Cir. 2003)).  Where a defendant has asserted "that the plaintiff cannot prove a necessary element of its claim," that is not an affirmative defense.  *Id.* (quoting *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 526 (2d Cir. 2004)).  Here, Plaintiff has alleged that Defendant did not have Cause to fire him at the time he was terminated, which is a necessary allegation to prove up his breach of contract claim.  Defendant's contention that it did in fact have Cause is thus an attack on the truth of that very allegation; it is not, like mutual mistake or impossibility, a defense that would defeat the cause of action irrespective of Plaintiff's allegations.

To support that argument, Plaintiff relies on a case in this Circuit, *Trainum v. Rockwell Collins, Inc.*, 2018 WL 11220003 (S.D.N.Y. Feb. 26, 2018), in which the court determined that it was the defendant's burden to show the existence of cause under an at-will contract in a breach of contract action.  In so holding, that court relied primarily[3] on

---

[3] The *Trainum* court also cited *Edmonds v. Kelly Servs.*, 53 A.3d 301 (Del. 2012), but the context

a case from the Eighth Circuit, *Ross v. Garner Printing Co.*, 285 F.3d 1106 (8th Cir. 2002), that addressed a breach of contract suit seeking damages on the basis of early termination of a five year fixed term contract which "provided that [the plaintiff] could only be terminated for cause." *Id.* at 1109.  An employment contract for a fixed term, however, is fundamentally different from an "at will" employment arrangement such as that at issue here.  Under New York law, when an employee is at will, the employer can terminate the employee for any reason or no reason at all.  *See Murphy v. American Home Prods.*, 448 N.E.2d 86, 90 (N.Y. 1983).  When an employee is able to negotiate an employment contract for a fixed term, by contrast, the employer can terminate the agreement only for good cause (or as specified in the agreement).  *See Shenk v. Red Sage, Inc.*, 1994 WL 18630, at *13 (S.D.N.Y. Jan. 21, 1994) ("Fundamentally, in the absence of good cause, an employment contract for a definite term may not be lawfully terminated by the employer before the expiration date of the contract") (citing *Alpern v. Hurwitz*, 644 F.2d 943, 945 (2d Cir. 1981)).  Thus, in the  context of a fixed duration employment contract, the obligation to show "cause" is best understood to raise an affirmative defense.  The "[p]laintiff's burden extends only to proving the existence of an employment contract for a specified term, discharge before expiration of that term and resulting damages." *Wegman v. Dairylea Co-op, Inc.*, 376 N.Y.S.2d 728, 733 (4th Dep't 1975) (citing *Felsen v. Sol Café Mfg. Corp.*, 249 N.E.2d 459, 460 (N.Y. 1969)).  If it

---

of that case is inapposite.  It relies on caselaw establishing that it is the employer's burden to prove just cause for termination when defending against a wrongful termination lawsuit.  53 A.3d at 301 (citing Avon Prods., Inc. v. Wilson, 513 A.2d 1315, 1317 (Del. 1986)).  There, where the employee has not argued that they are entitled to compensation because they were fired without cause but because they were fired for a wrongful purpose, evidence that they were in fact fired for a proper purpose is an affirmative defense.

were instead the employee's burden to show existence of cause for termination in a fixed term contract, that would in effect convert an employment agreement for a stated term into one that permits termination at will. Thus, properly understood, the Eighth Circuit's decision in *Ross* supports this Court's conclusion, and highlights the important distinctions between the burden of proving good cause for termination as between at-will and fixed duration employment agreements.

Here, unlike in *Ross*, Plaintiff was an at-will employee and could be terminated pursuant to the Employment Agreement either with or without Cause. *See Parker v. Borock*, 156 N.E.2d 297, 298 (N.Y. 1959) (where a contract was "terminable at-will," it would "not give rise to a cause of action" for "wrongful discharge."); *Stucklen v. Kabro Assocs.*, 759 N.Y.S.2d 256, 257 (2d Dep't 2005) ("the exercise of the right of termination associated with a hiring at-will is a means of completion of the contract.") He therefore does not and, and could not, cannot challenge the fact of his termination. His claim is that, having terminated him, Arena violated its separate agreement to pay him severance. If Kraft and Arena had negotiated an agreement for a bonus if Kraft personally or the company generally hit a revenue target, the Court would consider the hitting of such target a condition precedent that Kraft would have to satisfy before Arena had an obligation to pay. Likewise, if the condition upon which severance was due in Kraft's Employment Agreement was that he worked at a company for more than one year, there can be no doubt that he would bear the burden of proving that condition precedent in order to recover in a breach of contract suit. It would not be an affirmative defense which Arena would have to prove. The contractual provision at issue operates here in the same way—just because that condition here is "cause," which under a fixed-duration contract

10

serves as a defense to what is otherwise a wrongful termination, does not change the fact that it operates as a condition precedent.

The Court's reading is in accordance with the well-reasoned decisions of sister courts. In *Jackson v. JHD Dental, LLC*, 2011 WL 2441920 (N.D. Ga. June 14, 2011), the court explained that "[t]he apparent confusion over the burden of proof seems to arise from cases where an employer terminates an employee in violation of a contract for a set term, and then tries to avoid its obligation by claiming that termination was 'for cause.'" *Id.* at *7. Whereas termination for cause in that set-term-contract context is better understood as an affirmative defense, "to the contrary," where termination without cause "is a prerequisite to the additional benefit of severance pay under an otherwise valid contract," the "burden of proving that the prerequisite has been met falls squarely on plaintiff." *Id.* In *Cornett v. Lender Processing Services, Inc.*, the court cited *Jackson* and held similarly that "[h]ad this been a fixed term contract terminable early only for cause, [defendant] may have had the burden of proving the requisite 'cause' for termination." 2013 WL 4780065, at *7 (M.D. Fla. Sept. 5, 2013). "However, even though the [employment contract] has an end date, [defendant] retained the right to terminate the agreement at any time," such that is the plaintiff's burden to "prove by a preponderance of the evidence" that the employment agreement was terminated without cause. *Id.*

This Court therefore disagrees with the *Trainum* court that the same principles as applied to fixed duration contracts should be imported to understanding the burden to show cause as to at-will contracts, and holds that the burden is on Plaintiff to show that the condition that gives rise to that additional benefit has occurred.[4]

---

[4] Although *Trainum* was affirmed by the Second Circuit in a summary order, *see Trainum v.*

## II. The Faithless Servant Doctrine

The parties also dispute the standard to be applied under the faithless servant doctrine as to what the moving party is required to prove in order to show its entitlement to the forfeiture of the allegedly faithless servant's compensation.

Preliminarily, this Court has previously noted that "New York law is not clear as to whether the faithless servant doctrine speaks to the relief available for a claim of breach of fiduciary duty or constitutes an independent tort." *Spencer-Smith v. Ehrlich*, 2024 WL 709291, at *16 n.20 (S.D.N.Y. Feb. 21, 2024) (citing *Ebel v. G/O Media, Inc.*, 2021 WL 2037867, at *4 (S.D.N.Y. May 21, 2021)); *see Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 242 (2d Cir. 2020) ("New York courts are far from clear regarding the contours of—and interplay between— a claim for breach of fiduciary duty and the faithless servant doctrine."). Although "some courts applying New York law have treated claims for breach of the duty of loyalty and claims brought under the faithless-servant doctrine as 'doctrinally distinct,'" *Ebel*, 2021 WL 2037867, at *4 (quoting *Yukos Cap.*, 977 F.3d at 242), the Second Circuit has approved of the approach adopted by other courts holding the two to be "essentially the same," *id.*; *see Yukos*, 977 F.3d at 242 (noting that caselaw suggested that the faithless servant doctrine provides a way to satisfy the "damage" element of a breach of fiduciary duty claim). Thus, the Court treats this counterclaim as a single claim for breach of the duty of loyalty, seeking relief, in part, under the faithless-servant doctrine.

Under the faithless servant doctrine, the faithless agent forfeits to his principal all

---

*Rockwell Collins, Inc.*, 765 F. App'x 514 (2d Cir. 2019), that opinion did address the district court's holding on the burden as to showing termination for cause. Neither party briefed the issue on appeal, and the Circuit accordingly did not consider it. *See Trainum v. Rockwell Collins, Inc.*, No. 18-1565 (2d Cir. filed May 23, 2018), Dkt. Nos. 69, 108.

compensation paid or earned during the period of his disloyalty.  *Mar. Fish Prods., Inc. v. World-Wide Fish Prods., Inc.*, 474 N.Y.S.2d 281, 287 (1st Dep't 1984); *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (per curiam); Restatement (Third) of Agency § 8.01 cmt. d ("An agent's breach of fiduciary duty is a basis on which the agent may be required to forfeit commissions and other compensation paid or payable to the agent during the period of the agent's disloyalty.").  "New York's faithless servant doctrine holds that '[o]ne who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary.'"  *CBRE, Inc. v. Pace Gallery of N.Y., Inc.*, 2021 WL 1198644, at *11 (S.D.N.Y. Mar. 30, 2021) (quoting *Yukos Cap.*, 977 F.3d at 229); *accord Feiger v. Iral Jewelry*, 363 N.E.2d 350, 351 (N.Y. 1977). "[T]he purpose of the doctrine is not to dissolve the 'well-established' boundaries of [an agent's] fiduciary duty, . . . but to provide a remedy for [a principal] if an [agent] breaches that duty and 'it is difficult to prove that harm resulted from the breach or . . . the [agent] realizes no profit through the breach.'"  *Sanders v. Madison Square Garden, L.P.*, 2007 WL 1933933, at *4 (S.D.N.Y. July 2, 2007) (Lynch, J.) (quoting Restatement (Third) of Agency § 8.01 (2006)); *Webb v. Robert Lewis Rosen Assoc., Ltd.*, 2003 WL 23018792, at *5–6 (S.D.N.Y. Dec. 23, 2003) ("[T]he faithless servant doctrine[] provides an additional mechanism for relief, notwithstanding that [the plaintiff] suffered no damage.").

 "'New York courts have used two different standards to determine whether an employee's misbehavior warrants forfeiture,' and the New York Court of Appeals has not resolved which one applies in particular circumstances." *Yukos Cap.*, 977 F.3d at 237 (quoting *Phansalkar*, 344 F.3d at 200–01).  Under one standard, articulated by the New York Court of Appeals in 1885, a disloyal employee forfeits promised compensation only when the

"misconduct and unfaithfulness . . . substantially violates the contract of service," *Turner v. Konwenhoven*, 2 N.E. 637 (N.Y. 1885), and courts have "found disloyalty not to be 'substantial' only where the disloyalty consisted of a single act, or where the employer knew of and tolerated the behavior," *Phansalkar*, 344 F.3d at 201–02. Under the second standard, also articulated by the Court of Appeals,

> An agent is held to uberrima fides in his dealings with his principal, and if he acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment, it amounts to such a fraud upon the principal, as to forfeit any right to compensation for services.

*Murray v. Beard*, 7 N.E. 553, 554 (N.Y. 1886). "The key distinction between the two concerns whether the breach of fiduciary duty must be 'substantial.'" *Robinson v. De Niro*, 739 F. Supp. 3d 33, 121—22 (S.D.N.Y. 2023) (quoting *Yukos Cap.*, 977 F.3d at 237). The more forgiving *Murray* standard "suggests that misconduct by an employee that rises to the level of a breach of a duty of loyalty or good faith is sufficient to warrant forfeiture." *Phansalkar*, 344 F.3d at 202. "New York courts have not reconciled any differences" between the two tests. *Id.*

Here, Plaintiff argues that *Turner* should control, whereas Defendant argues that *Murray* controls. In making their arguments, both paint the principle offered by the opposing case in stark terms. Plaintiff argues that by adopting the standard of *Murray*, the Court would "effectively convert the doctrine into a strict-liability wage forfeiture rule," as "any breach of loyalty—no matter how isolated, minor, or unrelated to the employee's core responsibilities— could strip an employee of earned compensation over an extended period." Dkt. No. 79 at 12. Defendant, on the other hand, argues that *Tuner* must not apply where forfeiture is sought from "a sophisticated, highly-compensated Chief Operating Officer," who "is accused in engaging in egregious fraud and dishonesty to extract from the Company hundreds of thousands of dollars in

14

additional compensation for himself, and millions of dollars in additional compensation for his fellow executives." Dkt. No. 78 at 11.  At the same time, however, both parties seemingly admit that although New York courts have not resolved exactly which standard applies to forfeiture of compensation under the fiduciary duty doctrine, the division is not as stark as they initially present.  Plaintiff concedes that he is prepared "to compromise" so long as the jury is instructed that forfeiture requires "proof of misconduct that is material, substantial, and contract-permeated," and that "no instruction be given concerning the number of acts necessary to satisfy that standard." Dkt. No. 79 at 17.  And Defendant concedes that the *Turner* standard may be applied so long as the jury is instructed that "even a single faithless act may still be deemed substantial." Dkt. No. 78 at 9, 12.

In light of the different formulations of the standard set out by the New York Court of Appeals, it is helpful to look at applications of the standard.  "Courts in the Circuit have limited the faithless servant doctrine 'to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks.'" *Gravitas Partners LLC v. Deutsch*, 2025 WL 2243720, at *13 (S.D.N.Y. Aug. 6, 2025) (quoting *LifeSci Cap. LLC v. Revelation Biosciences, Inc.*, 2024 WL 3634709, at *3 (S.D.N.Y. Aug. 1, 2024)).  And although the Second Circuit has set no "bright line," *Yukos*, 977 F.3d at 239, in *Phansalkar*, it held (without endorsing substantiality as the standard) that the employees' disloyalty was substantial because it was not "limited to a single, isolated incident, but rather occurred repeatedly, in nearly every transaction on which he worked." 344 F.3d at 202.  And in *Carco Group, Inc. v. Maconachy*, the Circuit held that it was not error for the district court to conclude that the defendant's disloyalty was "substantial" when the defendant had altered "over one hundred

weekly reports."  383 F. App'x 73, 77 (2d Cir. 2010) (summary order).  This Court has previously explained that "[t]he reporters of the Restatement (Third) of Agency, to which the New York courts turn for guidance, . . . have analyzed the New York cases and suggested that they turn not on the basis of the substantiality of the breach but on whether the effects of it can be segregated."  *Spencer-Smith*, 2024 WL 709291, at *17.  "The better rule permits the court to consider the specifics of the agent's work and the nature of the agent's breach of duty and to evaluate whether the agent's breach of fiduciary duty tainted all of the agent's work or was confined to discrete transactions for which the agent was entitled to apportioned consideration."  Restatement (Third) of Agency § 8.01 cmt. d.  "If the breach tainted all of the work during the period of disloyalty, then all of the compensation that the agent earned during that period must be forfeited."  *Spencer Smith*, 2024 WL 709291, at *17 (citing cases).  Another way to put it is that the "substantiality" of a breach under the *Turner* standard is measured more by its reach than its gravity.  If the breach infects the agent's work in a way that cannot be segregated, it may be substantial even if the breach is not accompanied by egregious signs of betrayal.

Therefore, the Court will follow the Restatement's understanding of New York law and instruct the jury that "if the breach tainted all of the work during the period of disloyalty, then it is substantial and all of the compensation that the agent earned during that period must be forfeited."  The Court will also instruct the jury that even a single faithless act may be deemed substantial.

SO ORDERED.

Dated: April 23, 2026
      New York, New York                              LEWIS J. LIMAN
                                                United States District Judge

16