UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                                    :
ANDREW Q. KRAFT,                                                    :
                                                                    :
                    Plaintiff,                                      :
                                                                    :                24-cv-2619 (LJL)
        -v-                                                         :
                                                                    :                ORDER
THE ARENA GROUP HOLDINGS, INC.,                                    :
                                                                    :
                    Defendant.                                      :
                                                                    :
--------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

        Attached is the charge given to the jury in this proceeding.

        SO ORDERED.


Dated: April 27, 2026
        New York, New York                        _____
                                                              LEWIS J. LIMAN
                                                         United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/27/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW Q. KRAFT,<br><br>               Plaintiff,<br><br>               -v-<br><br>THE ARENA GROUP HOLDINGS INC.,<br><br>               Defendant. | 24-cv-2619 (LJL) |

**FINAL JURY INSTRUCTIONS**

## INTRODUCTION

Members of the jury, you have now heard all of the evidence as to the claim by the Plaintiff, Andrew Kraft, against the Defendant The Arena Group Holdings.  You have also heard all of the evidence as to the counterclaims of The Arena Group Holdings against Andrew Kraft.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.  We are near the point where you will undertake your vital function as jurors of deliberating.  Now that the lawyers have made their closing arguments, I am going to instruct you about the law that governs the case.  There are two parts to these instructions:

*First*, I will provide you with some general instructions about your role and about how you are to decide the facts of the case.  These instructions would apply to just about any trial.

*Second*, I will give some specific instructions about the legal rules applicable to this particular case.

Then I will give you some final instructions before you begin your deliberations.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and that you concentrate.  I ask you for your patient cooperation and attention.  You will notice that I am reading these instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So when I tell you the law, it's critical that I use exactly the right words.

You will be able to bring your copies of what I am reading in the jury room to consult, so don't worry if you miss a word or two.  But for now, listen carefully and try to concentrate on what

1

I'm saying. I will also be distributing to you a verdict form in which to record your verdict. It will list the questions that you should consider, in the order you should consider them.

## GENERAL INSTRUCTIONS

### a. Role of the Court

I will now instruct you on the law. It is my duty to do that, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration. It is your duty to accept my instructions on the law and to apply them to the facts as you determine them.

On these legal matters, you must take the law as I give it to you. You must not substitute your own notions or opinions of what the law is or ought to be. You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or should be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

If any attorney states or has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any particular instruction alone as stating the law, and you should consider my instructions as a whole when you retire to deliberate in the jury room.

You are not to infer from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case. Any questions I asked were designed to make sure that the testimony was clear and to avoid confusion. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

2

**b.  Role of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts.  You pass judgment upon the evidence.  You determine the credibility of the witnesses.  You resolve any conflicts there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional expertise you might have or other facts not in evidence to the other jurors during deliberations.  You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone.  You may not consider or speculate on matters not in evidence or matters outside the case.

**c.  Role of Counsel / Objections and Sidebars**

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  Therefore, you should draw no inference from the fact that an attorney objected to any evidence.  Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

From time to time, the lawyers and I had conferences at sidebar, out of your hearing.  These conferences involved procedural and other matters.  None of the events relating to these conferences should enter into your deliberations at all.

Similarly, the personalities and the conduct of counsel in the courtroom are not in any way in issue.  If you formed reactions of any kind to any of the lawyers, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

**d.  Juror Oath/ Sympathy or Bias**

3

I know you will try the issues that have been presented to you according to the oath that you have taken as jurors in which you promised that you would well and truly try the issues joined in this case and render a true verdict.  If you follow that oath, and try the issues without fear or prejudice or bias or sympathy, you will arrive at a true and just verdict.

You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial.  Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence.  The parties in this case are entitled to a trial free from prejudice and bias.  Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any party or any witness, or any other such irrelevant factor.  This case should be decided by you as an action between parties of equal standing in the community, and of equal worth.

### e.  **All Persons Equal Before the Law**

The mere fact that one of the parties in this case is a corporation does not mean it is entitled to any lesser consideration by you.  It also is not entitled to any greater consideration. All litigants are equal before the law, and companies, big or small, are entitled to the same fair consideration as you would give any other individual party.  This means you must treat Mr. Kraft and corporate entity The Arena Group Holdings as equal under the law.

### f.  **Burden of Proof**

Because this is a civil case, the preponderance of the evidence standard applies to all disputed issues with the single exception of The Arena Group's counterclaim for fraud and the

defenses of unclean hands and mutual mistake about which I will give you instructions later. Let me now instruct you on the preponderance of the evidence standard that applies to all other claims.

Some of you may have heard of "proof beyond a reasonable doubt," which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this one, and you should put it out of your mind.

What does a "preponderance of the evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all the witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have offered or produced them.

In this case, Mr. Kraft has a claim against The Arena Group, and The Arena Group has counterclaims against Mr. Kraft. The party bringing the claim has the burden of proof as to that claim. On Mr. Kraft's claim against The Arena Group, you may find in his favor only if, after considering all of the evidence, you are satisfied that Mr. Kraft has carried his burden on each essential point of his claim. On The Arena Group's claims against Mr. Kraft, The Arena Group bears the burden of proof, and you may find in its favor only if, after considering all of the evidence, you are satisfied that it has carried its burden on each essential point of its claims.

If, after such consideration, you find that the evidence produced by the party with the burden of proof is outweighed by the evidence against the position of the party with the burden of proof, or that the credible evidence on a given issue is evenly divided between the parties—that it is as equally probable that one side is right as it is that the other side is right—then you must decide

5

that issue against the party with the burden of proof.  That is because the party with the burden of proof must prove more than simple equality of evidence.  On the other hand, the party with the burden of proof need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the party with the burden of proof—that what the party with the burden of proof claims is more likely true than not—then that element will have been proven by a preponderance of the evidence.

### g.  What is and Is Not Evidence

I want to take a moment to describe to you what is and is not evidence in this case.  As I have said, you may rely only on the evidence in your deliberations.  The evidence in this case is the sworn testimony of the witnesses and the exhibits received in evidence.  On the other hand, certain things are not evidence.

First, I will describe a list of examples of things that are not evidence:

A question by a lawyer is not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Similarly, arguments by lawyers and demonstrative exhibits used in connection with such argument are not evidence, because the lawyers are not witnesses.  Each of the lawyers has made assertions in their opening statements and in their closing statements.  What they have said in their opening statements and in their closing statements is not evidence.  It was intended only to help you understand the evidence and to reach your verdict.  However, if your recollection of the

6

evidence that was received in Court differs from the lawyers' statements, it is the evidence and your recollection of the evidence which controls.

Statements that I may have made concerning the evidence do not constitute evidence.

Testimony that has been stricken or excluded or that I have asked you to disregard is not evidence, and it may not be considered by you in rendering your verdict.

Anything you may have seen or heard outside the courtroom is not evidence.

Now, I will provide you with some things that you may consider as evidence. As I have said, evidence may come in several forms:

The sworn testimony of witnesses, regardless of who called them, is evidence. This is true of the witnesses' answers on both direct and cross-examination. However, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given.

The exhibits that were admitted during the trial, regardless of who may have presented them, are evidence. However, if certain exhibits were received for a limited purpose, you must follow the limiting instructions I have given.

### h. **Direct and Circumstantial Evidence**

Generally, as I told you in my initial instructions, there are two types of evidence that you may consider in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses—something he or she has seen, felt, touched or heard. For example, if a witness testified that when she left her house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. To restate the example I gave you earlier this week, assume that when you came into the

courthouse this morning, the sun was shining, and it was a nice day.  Assume that the courtroom blinds were drawn, and you could not look outside.  As you were sitting here, someone walked in with an umbrella, which was dripping wet.  Then a few minutes later, another person entered with a wet raincoat.  Now, you cannot look outside of the courtroom, and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.  Many facts, such as a person's state of mind, are rarely susceptible to proof by direct evidence.  Usually, such facts are established by circumstantial evidence.  Where circumstantial evidence is presented, it is of no less value than direct evidence, for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

### i.  <u>Inferences</u>

During the trial, you may have heard the parties use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that you know exists.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  It is for you, and you alone, to decide what inferences you will draw.  In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience.

### j.  Witness Credibility

You have had the opportunity to observe the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judge of the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies?  You watched each witness testify.  Everything a witness said or did on the witness stand counts in your determination.  How did the witness impress you?  Did he or she appear to be frank, forthright, and candid?  Or was the witness evasive and edgy, as if hiding something?  How did the witness appear?  What was his or her demeanor— that is, the witness's behavior, bearing, manner and appearance while testifying?  Often it is not what a person says but how he or she says it that moves us.

On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness. It is for you to determine whether the prior statement was inconsistent, and if so, how much if any weight to give to an inconsistent statement in assessing a witness's credibility at trial.  Evidence of a prior inconsistent statement was placed before you not because it is itself evidence of a party's claim or defense to the claim, but only for the purpose of helping you decide whether to believe

the trial testimony of a witness who may have contradicted a prior statement.  If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.  In considering a prior inconsistent statement, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which the witness testified, the accuracy of his or her memory, his or her candor or lack of candor, the witness's intelligence, the reasonableness and probability of the witness's testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of the witness's demeanor, the explanations given, and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

If you find that any witness has willfully testified falsely as to any material fact—that is, as to an important matter—the law permits you to disregard the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything.  However, you are not required to consider such a witness as totally "unbelievable."  You may accept so much of the witness's testimony as you deem true and disregard what you feel is false.  By the processes which I have just described, you, as the sole

judges of the facts, decide which of the witnesses you will believe, what portion of each witness's testimony you accept, and what weight you will give to it.

### k. Testimony by Deposition

Some of the testimony before you is in the form of depositions which have been received in evidence. At some point before this trial began the party deposed, under oath, answered certain questions put to them by the lawyers for the party taking their testimony. A stenographer recorded the questions and answers and transcribed them into a document. The portions of the transcript that were introduced as evidence are to be considered as if the party deposed were testifying from the witness stand and are to be evaluated according to the same standards you would use to evaluate the testimony of a witness testifying live in front of you at trial.

### l. Remote Testimony

Several witnesses appeared remotely, and gave their testimony by video. You should treat their testimony the same as you treat the testimony from any live witness.

### m. No Negative Inference from Asserting Attorney-Client Privilege

You have heard reference to the attorney-client privilege. The assertion of the attorney-client privilege is a lawful and proper exercise of a legal right. You must not draw any negative inference or unfavorable conclusion against any party or witness because the privilege was asserted. The fact that a communication subject to the attorney-client privilege was not disclosed must not enter into your deliberation in any way. You must not speculate about the content of any privileged communication. Your verdict must be based solely on the evidence admitted at trial and the instructions of law I have given you.

### n. Use of Requests for Admission

11

Evidence was presented to you in the form of admissions to the truth of certain facts.  These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures.  You must treat these facts as having been proved.

## MR. KRAFT'S CLAIM AGAINST THE ARENA GROUP

With those general instructions in mind, let us turn to the substantive law to be applied in this case.  I will begin by explaining the law as to Mr. Kraft's breach of contract claim against The Arena Group, and then by explaining the law as to The Arena Group's counterclaims against Mr. Kraft.  Recall that the moving party has the burden of proof as to each essential element of their claims.

### 1.  Breach of Contract Claim

As you have heard, the plaintiff, Andrew Kraft, seeks to recover damages for breach of contract. Mr. Kraft has the burden of proving, by a preponderance of the evidence, that he had a valid contract with The Arena Group, that he adequately performed his own obligations under the contract, that The Arena Group breached the contract by not doing what it was required to do under the contract, and that he sustained damages because of The Arena Group's breach.

The parties agree that Mr. Kraft and The Arena Group entered into an executive employment agreement dated January 1, 2021 (which the Court will refer to as the "Employment Agreement").  Mr. Kraft contends he fully performed his obligations under the Employment Agreement, that The Arena Group terminated his employment without cause and hence was required to pay the severance compensation and benefits required by the Employment Agreement for a "without cause" termination, and that The Arena Group failed to pay severance compensation

and benefits required by the Employment Agreement and purported amendment to the Employment Agreement following that termination.

The Arena Group disputes Mr. Kraft's claim. The Arena Group asserts that the purported amendment to the Employment Agreement was invalid, that Mr. Kraft did not fully perform his obligations under the Employment Agreement, that it did not breach the Employment Agreement because it terminated Mr. Kraft "for cause," and that Mr. Kraft is not entitled to any severance compensation or benefits following his termination for cause.

To prevail on his breach of contract claim, Mr. Kraft must prove each of the following elements by a preponderance of the evidence:

(1) That Mr. Kraft and The Arena Group entered into a valid and enforceable contract;

(2) That Mr. Kraft performed his obligations under the contract;

(3) That The Arena Group breached the contract by failing to pay the severance and other compensation and benefits specified under the contract; and

(4) That Mr. Kraft suffered damages as a result of The Arena Group's breach.

If Mr. Kraft proves all four elements, you must find in his favor. If Mr. Kraft fails to prove any one of these elements, you must find for The Arena Group on Mr. Kraft's claim for breach of contract. I will walk through what you are required to find as to each of these four elements to find for Mr. Kraft.

### a. Existence of a Valid Employment Agreement

The first element that Mr. Kraft must prove by a preponderance to succeed on his breach of contract claim is the existence of a valid employment agreement. As I mentioned, the parties agree that Mr. Kraft and The Arena Group entered into a written Employment Agreement dated

13

January 1, 2021, governing the terms of Mr. Kraft's employment, compensation, severance, benefits, and equity rights. You should therefore taking this element as established.

### b. Plaintiff's Performance

The second element that Mr. Kraft must prove to succeed on his breach of contract claim is that he performed his obligations under the Employment Agreement.

Mr. Kraft contends that he fully performed his duties as an executive of The Arena Group up to the date of his termination. The Arena Group contends that Mr. Kraft did not fully perform his duties as an executive of the company and, thus, was terminated for cause.

If you find that Mr. Kraft at least substantially performed his obligations under the Employment Agreement, this element is satisfied. If you find that Mr. Kraft did not at least substantially perform his obligations under the Employment Agreement, then this element is not satisfied, and you must find for The Arena Group.

### c. Breach of the Employment Agreement

The third element that Mr. Kraft is required to prove by a preponderance to succeed on his breach of contract claim is that there was a breach of the Employment Agreement. Mr. Kraft does not contend that the termination of his employment by The Arena Group breached the Employment Agreement. Mr. Kraft was an at-will employee, and The Arena Group had the right to terminate his employment at any time, with or without cause.

Mr. Kraft contends rather that The Arena Group breached his employment agreement by failing to pay him the certain severance compensation and post-termination benefits owed to an employee who is terminated without cause.

The Arena Group contends that it did not breach the Employment Agreement because Mr. Kraft was terminated for cause and the Employment Agreement did not require The Arena Group

14

to pay any severance or post-termination benefits.  To decide whether The Arena Group breached the Employment Agreement, you will need to decide first whether The Arena Group provided Mr. Kraft with written notice that he was terminated for cause and second, if so, whether The Arena Group had "Cause" as defined in the Employment Agreement for Mr. Kraft's termination.  Section 1.3(b)(i) of the Employment Agreement provides that The Arena Group could terminate Mr. Kraft's employment for cause only if it provided him written notice setting forth the termination date and, in reasonable detail, the circumstances claimed to provide a basis for termination for cause.  If you find that The Arena Group did not provide Mr. Kraft the notice required by Section 1.3(b)(i) of the Employment Agreement, this element will have been satisfied.  If you find that The Arena Group did provide Mr. Kraft the notice required by Section 1.3(b)(i) of the Employment Agreement, you will then need to decide whether The Arena Group had "Cause" for Mr. Kraft's termination as "Cause" is defined in the Employment Agreement.

Under the Employment Agreement, "Cause" is a defined contractual term, limited to specific grounds.  The Arena Group provided the two reasons for why it terminated Mr. Kraft for cause; accordingly, you may only consider the following two reasons as set forth in the Employment Agreement in determining whether Mr. Kraft was terminated for cause.  Those two definitions of Cause are as follows:

Section 1.5 (e)(iii): [Mr. Kraft's] engagement in dishonesty, illegal conduct, or willful misconduct; it being understood that no act or failure to act on the part of [Mr. Kraft] shall be considered "willful" unless it is done, or omitted to be done, by [Mr. Kraft] in bad faith or without reasonable belief that [Mr. Kraft's] action or omission was in the best interest of [The Arena Group].

15

Section 1.5(e)(iv): [Mr. Kraft's] embezzlement, misappropriation, or fraud against [The Arena Group] or any of its Affiliates.

You may not find "Cause" based on conduct outside these enumerated grounds, even if you believe The Arena Group was dissatisfied with Mr. Kraft's performance, judgment, or management style.

You may determine that Mr. Kraft's termination was motivated by more than one reason. If you determine that The Arena Group terminated Mr. Kraft for "Cause," as that term is defined in the agreement then you must find that Mr. Kraft was terminated for "Cause" even if you determine that The Arena Group was also motivated by an alternative reason.  In short, evidence that The Arena Group may have had more than one motivation for terminating Mr. Kraft's employment, does not mean that it did not validly terminate Mr. Kraft's employment for Cause.

Even if The Arena Group provided Mr. Kraft the required notice, if you find that Mr. Kraft has satisfied his burden to show that The Arena Group did not have "Cause" for his termination, he will have satisfied his burden to show its breach of the Employment Agreement.

To summarize, if you find that Mr. Kraft was given the required notice and was terminated for cause, then Mr. Kraft is not entitled to any severance compensation or post-termination benefits, and you must find for The Arena Group on the breach of contract claim.  If you find that The Arena Group either failed to give Mr. Kraft the required notice or that it did not have Cause for his termination and that it failed to provide the severance compensation and benefits that the Employment Agreement required to be provided to an employee terminated without Cause, then you must find that The Arena Group breached the Employment Agreement and you should next consider damages.

**d.  Damages**

16

If you find that the Employment Agreement was an enforceable agreement, that Mr. Kraft performed under that agreement, and that Arena breached the agreement, the parties have stipulated that he is entitled to damages. My charge to you on the law of damages must not be taken as a suggestion that you should find for Mr. Kraft. It is for you to decide on the evidence presented and the rules of law I have given you whether the plaintiff is entitled to recover from The Arena Group. If you decide Mr. Kraft is not entitled to recover, you need not consider damages. Only if you decide that the Mr. Kraft is entitled to recover will you consider damages.

As the jury, you are charged only to determine liability and one other element of damages, which concerns any bonuses earned by Mr. Kraft. I will give you further instruction on that element that you must find in a moment. But as to all other damages, once you determine liability, the Court will insert the values as stipulated by the parties if you render a verdict in Mr. Kraft's favor. However, to determine the stipulated value to be awarded, you must determine the agreements by which The Arena Group is bound.

As I have instructed you, the parties do not dispute that the Employment Agreement dated January 1, 2021, is a valid and enforceable agreement binding on both Mr. Kraft and The Arena Group. The parties dispute whether the document titled "First Amendment to Amended & Restated Executive Employment Agreement" dated August 1, 2023 is valid and enforceable agreements binding on The Arena Group. Mr. Kraft argues that this agreement is binding while The Arena Group contends it is unenforceable because it were not approved by the Compensation Committee in accordance with the company's corporate governance procedures and, further, the later document was not timely executed. I will refer to the document as the August 1, 2023 Agreement. You should draw no inference from the fact that I am describing this document as an agreement; it will be for you to decide whether it is a binding agreement.

Mr. Kraft argues that there are several reasons why the document constitutes a binding agreement.

First, the governing By-laws of The Arena Group and the Charter of the Compensation Committee provide that the Compensation Committee had the authority to bind the company to changes in the compensation of key executives who reported directly to the CEO, including Mr. Kraft. The first question you will need to address then is whether the Compensation Committee of the Board of Directors approved the August 1, 2023 Agreement in accordance with the corporate governance procedures required by the governing Bylaws and Charter. If you answer that question affirmatively, you need not consider either of the two other ways in which the agreement may be binding on the Arena Group.

Even if you find that the Compensation Committee did not approve the August 1, 2023 Agreement you may find that the agreement is binding on The Arena Group on either a theory of apparent authority or of ratification. I will first instruct you on apparent authority.

Apparent authority arises when a principal, through its words or conduct, leads another person reasonably to believe that an agent has authority to act on the principal's behalf, even if the agent may not, in fact, have been given actual authority.

Thus, a corporation may be bound by an agreement signed by an officer of The Arena Group if The Arena Group's conduct reasonably caused the other party to believe that the officer had authority to enter into that agreement. However, if the officer acts outside of the scope of his authority, and the other party knows this, then the officer lacks both actual and apparent authority, and The Arena Group is not bound to the contract, because the contract is void—it never came into legal existence.

18

To establish that the then-CEO, Ross Levinsohn, had apparent authority to bind The Arena Group, Mr. Kraft must prove, by a preponderance of the evidence, all of the following:

(1) That the Board of Directors of The Arena Group or The Arena Group's Compensation Committee, by its words or conduct, held out the CEO as having authority to execute the contract amendment on The Arena Group's behalf;

(2) That Mr. Kraft reasonably relied on the representations of the Board or its Compensation Committee that the CEO had such authority; and

(3) That Mr. Kraft relied on that appearance of authority in signing the contract amendment.

Apparent authority cannot be created solely by the CEO's own statements or actions. Rather, it must arise from the words or conduct of The Arena Group itself — including the actions of its Board of Directors or its Compensation Committee acting within their respective roles — that reasonably conveyed to Mr. Kraft that the CEO had authority.  In other words, apparent authority cannot exist without evidence of misleading conduct or words by either The Arena Group's Board of Directors or its Compensation Committee.

The question is whether, under all the circumstances, a reasonable person in Mr. Kraft's position would have reasonably relied on representations of The Arena Group's Board of Directors or its Compensation Committee that gave an appearance that the CEO had authority to bind The Arena Group.

If you find that Mr. Kraft has proven apparent authority as to the August 1, 2023 Agreement, then The Arena Group is bound by that contract amendment, even if the CEO did not have actual authority or even if internal corporate procedures were not properly followed.

Additionally, even if you find that the Compensation Committee did not approve the August 1, 2023 Agreement, it may still be binding on The Arena Group if the agreement was

19

ratified by The Arena Group.  Ratification occurs when a party, with full knowledge of all material facts, accepts the benefits of a contract or agreement, thereby affirming its validity, even if there were initial procedural defects in its execution.

To establish ratification, Mr. Kraft must prove the following elements by a preponderance of the evidence:

(1) The Board of Directors or the Compensation Committee of The Arena Group, through its actions, accepted the benefits of the amendment to the employment contract;

(2) The Board of Directors or the Compensation Committee of The Arena Group had full knowledge of all material facts related to the amendment; and

(3) The Board of Directors or the Compensation Committee's conduct was consistent with an intention to affirm the amendment. Such assent must be clearly established and not be inferred from doubtful or equivocal acts or language.

If you find that the Board of Directors or the Compensation Committee of The Arena Group, with full knowledge of the amendment, clearly assented to the amendment, you should conclude that The Arena Group ratified the amendment.

If Mr. Kraft has proven ratification, The Arena Group cannot later contest the validity of the amendment based on the lack of initial approval by the Compensation Committee.

If you find that the Board of Directors or the Compensation Committee of The Arena Group did not have full knowledge of all material facts of the amendment, or did not clearly assent to its terms, then you must conclude that The Arena Group did not ratify the amendment.

Again, the parties have entered into a binding stipulation as to all but one portion of the amount of damages due depending on whether the August 1, 2023 Agreement was binding on the

20

Company. Once you determine if that amendment is valid and binding, the Court will calculate the stipulated value.

If you find that The Arena Group breached the Employment Agreement, regardless of whether the August 1, 2023 Agreement is valid or whether it breached that agreement, you must determine only whether Mr. Kraft "earned" any of bonuses in the fiscal year 2023 prior to his termination. Pursuant to the Employment Agreement, if The Arena Group terminated Mr. Kraft without Cause, he was entitled to a severance payment and to "payment for earned bonuses pursuant to the bonus targets" calculated in each quarter as a percentage of his performance metrics. The parties dispute whether Mr. Kraft earned bonuses and in what amounts. Section 1.2(b) of the Employment Agreement made Mr. Kraft eligible for a bonus, to be made in quarterly payments of up to $55,000, where the percentage of the $55,000 awarded would be determined based on Mr. Kraft's percentage attainment of performance metrics as agreed with the CEO. The parties agree that there were three quarters in which Mr. Kraft was eligible to receive bonuses prior to his termination in 2023. Based on his performance that year, he was entitled to anywhere from zero to one hundred percent of $55,000 depending on the percentage attainment of his performance metrics. You must decide, based on the evidence before you, what percentage of that $55,000 if any Mr. Kraft earned in quarters one, two, and three of 2023. For example, if you believe, based on a preponderance of the evidence, that Mr. Kraft met 100% of the performance metrics agreed upon with the CEO of The Arena Group in any given quarter, you would award $55,000 for that quarter. If you determine that he met 0% of those metrics, you would award zero dollars.

Finally, if you determine that the August 1, 2023 Agreement was valid, that agreement changed the amount of the quarterly bonus available to Mr. Kraft to $125,000. Thus, if you find that the August 1, 2023 Agreement was binding on The Arena Group, as to the third quarterly

21

bonus payment, he would be eligible for a bonus of from $0 to $125,000 depending on the percentage of attainment of the performance metrics he achieved.

## 2. **Unclean Hands Defense**

If you find for Mr. Kraft on each element of his breach of contract claim and that he has proven that the August 1, 2023 Agreement is binding on The Arena Group, you must consider whether Defendant has proven that Mr., Kraft is not entitled to relief under the August 1, 2023 Agreement under the doctrine of unclean hands. This is a defense to damages under the August 1, 2023 Agreement, and as such The Arena Group bears the burden of proof of proving this defense by clear and convincing evidence. A party who has unclean hands is denied relief, regardless of whether he has otherwise proven his claim. I will instruct you later on the standard of proof of clear and convincing evidence.

While there is no precise rule applied to determine whether a party's hands are clean, in general terms, the unclean hands defense has two parts: first, the party said to have unclean hands must have engaged in fraudulent, deceitful, or bad faith behavior; and second, the bad conduct must be connected with the subject matter of the lawsuit.

The Arena Group claims that Mr. Kraft has unclean hands because he acted fraudulently, deceitfully, and in bad faith, by withholding critical information from the Compensation Committee and misstating critical facts to the Compensation Committee in order to induce the Compensation Committee to award him additional compensation, including some of the damages that he claims in this lawsuit, in connection with the August 1, 2023 Agreement.

If you find that The Arena Group has proven this defense clear and convincing evidence Mr. Kraft cannot recover on his breach of contract claim.

22

**THE ARENA GROUP'S COUNTERCLAIMS AGAINST MR. KRAFT**

I will now turn to The Arena Group's counterclaims against Mr. Kraft.  The Arena Group brings three different claims against Mr. Kraft, for breach of fiduciary duty of loyalty, the breach of a fiduciary duty to disclose, and for fraud.  I will instruct you as to each claim in turn.  Recall that The Arena Group bears the burden of proof on its claims against Mr. Kraft.

1. **Breach of Fiduciary Duty of Loyalty Claim**

The Arena Group claims that Mr. Kraft breached his fiduciary duty to the company.  The Arena Group must establish by a preponderance of the evidence that (1) a fiduciary relationship existed between Mr. Kraft and The Arena Group; (2) that Mr. Kraft breached that duty; and (3) The Arena Group suffered damages as a result of the breach.

A fiduciary relationship exists between two parties when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relationship.  Under New York law, corporate officers are fiduciaries.  Accordingly, the parties agree that as the former Chief Operating Officer of The Arena Group, Mr. Kraft owed a fiduciary duty to the company.  This element should be considered by you as established.

An employee has a duty to be loyal to his employer and to act in good faith and in the employer's best interests during the period of employment.  As such, an employee owes his employer undivided and unqualified loyalty and may not act in any manner contrary to the interests of the employer.  A person acting in a fiduciary capacity is required to make truthful and complete disclosures to those to whom a fiduciary duty is owed, and the fiduciary is forbidden to obtain an improper advantage at the employer's expense.  This requires that, while employed, the employee must exert his best efforts on behalf of the company and not profit at its expense, or place his private interests in conflict with the company's interests.  An officer can breach fiduciary duties

23

by accepting compensation that is clearly improper or by wrongfully influencing compensation decisions.

The Arena Group claims that Mr. Kraft did not act in good faith or in the best interests of the company by: (1) wrongfully influencing compensation decisions and acting in his own self-interest by failing to disclose material facts to the Compensation Committee and making false and misleading statements to the Compensation Committee; and (2) pushing through change-in-control compensation, and accepting such change-in-control compensation, even though he knew the compensation was not properly approved by the Compensation Committee.  The Arena Group claims that it sustained damages as a result of this breach.  Mr. Kraft denies breaching his fiduciary duty to The Arena Group and claims that he did not withhold information from or mislead the Compensation Committee, and further, claims that he believed that the Compensation Committee had approved each and every relevant change-in-control compensation.

It is your obligation to determine whether Mr. Kraft breached his fiduciary duty of loyalty to The Arena Group.  If you find that Mr. Kraft breached his fiduciary duty to The Arena Group, you must then decide whether that breach of duty caused the company to sustain damages.

If you find that Mr. Kraft's breach caused The Arena Group to sustain damages, you must determine either the amount of damages that The Arena Group sustained as a result of the breach or that Mr. Kraft was a faithless servant.

Under the faithless servant doctrine, an employee who owes a fiduciary duty to his employer and who is faithless in the performance of his services is required to return all compensation that he received during the period of disloyalty.

A "faithless" employee is one who has engaged in material misconduct evincing disloyalty toward his or her employer, and thereby forfeits his or her right to compensation.  Damages are

24

limited to the period during which the employee was disloyal.  If the breach tainted all of the work during the period of disloyalty then it is substantial and all of the compensation that the agent earned during that period must be forfeited.  Even a single faithless act may be deemed substantial. The remedy of forfeiture is applicable even where the employee has otherwise performed in an exemplary manner.

### 2.    Breach of Fiduciary Duty to Disclose Claim

In addition to breach of the fiduciary duty of loyalty, The Arena Group also claims that Mr. Kraft breached his fiduciary duty to disclose, which is sometimes called the duty of candor, by failing to notify the Compensation Committee of material facts that he knew or should have known the Compensation Committee would wish to know in the course of its deliberations.  Officers of a corporation, like Mr. Kraft, owe a duty of candor to the corporation, which means that he must make a full disclosure of all material facts to those to whom he owes a fiduciary duty.  A material fact is one that, under the circumstances, would have actual significance to the decisionmaker to whom the fiduciary owed a duty.

The Arena Group contends that Mr. Kraft breached his fiduciary duty to disclose when he failed to notify the Compensation Committee that the owner of the company that was to purchase The Arena Group, Manoj Bhargava, had requested that The Arena Group hold off implementing any new severance or other change-in-control or retention compensation.  The Arena Group further contends that Mr. Kraft breached his duty of candor when he failed to make truthful and complete disclosures to the Compensation Committee during the November 2, 2023, Compensation Committee meeting regarding the Buyer's knowledge of the proposed change-in-control compensation and equity.  Finally, The Arena Group contends that Mr. Kraft breached his duty of candor by acting in his own self-interest by hiding material facts from and misleading the

25

Compensation Committee, in order to induce the Compensation Committee to award him additional compensation, bonuses, and equity.  The Arena Group claims that as a result of these breaches, the company sustained damages.  Mr. Kraft denies breaching his fiduciary duty to The Arena Group and claims that he did not withhold information from or mislead the Compensation Committee.

It is your obligation to determine whether Mr. Kraft breached his fiduciary duty of candor to The Arena Group.  If you find that Mr. Kraft breached his fiduciary duty to The Arena Group, you must then decide whether that breach caused the company to sustain damages.  If you find that Mr. Kraft's breach caused The Arena Group to sustain damages, you must determine the amount of damages that The Arena Group sustained as a result of the breach.  If you find that The Arena Group suffered no damages caused by the breach of fiduciary duty of candor, you must find for Mr. Kraft.

### 3.  Fraud Claim

Finally, The Arena Group assets a counterclaim for fraud against Mr. Kraft.  Specifically, The Arena Group claims that Mr. Kraft made false statements to the Compensation Committee in order to induce the Compensation Committee to award additional compensation and equity.  Mr. Kraft denies that he committed fraud.  Unlike the other claims about which I have instructed, The Arena Group is required to prove the fraud count by clear and convincing evidence, which I will describe further momentarily.

In order to recover for fraud, The Arena Group must prove by clear and convincing evidence that: (1) Mr. Kraft made a statement of material fact; (2) the statement was false; (3) Mr. Kraft either knew that the statement was false or made the statement recklessly without regard to whether it was true or false; (4) Mr. Kraft made the statement to convince the Compensation

26

Committee to rely upon it; (5) the Compensation Committee did rely on Mr. Kraft's statement; (6) the Compensation Committee's reliance on Mr. Kraft's statement was justifiable; and (7) The Arena Group sustained damages because of its reliance on Mr. Kraft's statement.

Clear and convincing evidence means evidence that satisfies you that there is a high degree of probability that there was fraud as I have defined it for you.  To decide for The Arena Group by clear and convincing evidence, it is not enough to find that the evidence supporting its case more nearly represents what actually happened than the evidence that is opposed to it.  The Arena Group must satisfy you that the evidence makes it highly probable that what The Arena Group claims is what actually happened.  If, upon all the evidence, you are satisfied that there is a high probability that there was fraud, you must decide for The Arena Group.  If you are not satisfied that there is such a high probability, you must decide for Mr. Kraft.

The first question you will be asked to decide is whether Mr. Kraft stated the following to the Compensation Committee in substance: (1) that the Buyer "knew everything" about the change-in-control bonuses and equity that were being presented to the Compensation Committee on November 2, 2023; (2) that The Arena Group leadership and the Buyer had "discussed" the change-in-control bonuses and equity that were being presented to the Compensation Committee on November 2, 2023; and (3) that the Buyer had "approved" the change-in-control bonuses and equity that were being presented to the Compensation Committee on November 2, 2023.

If you decide that Mr. Kraft did state one or more of these things, the next question you must decide is whether that statement was material.  A statement of fact is material if a reasonable person would consider it important.

If you decide that Mr. Kraft's statement was material, you must next decide whether the statement was false. A statement is false if, taken as a whole, it communicates something that is untrue when considered from the viewpoint of an ordinary person.

If you decide that the statement was false, you must next decide whether Mr. Kraft either knew it was false or made the statement recklessly without regard to whether it was true or false. A statement is made recklessly if it is made when the person making it does not have an honest and reasonable belief in its truth.

If you decide that Mr. Kraft did know that the statement was false or that Mr. Kraft acted recklessly in making the statement, you must next decide whether the statement was made to convince the Compensation Committee to award the change-in-control compensation and equity.

If you decide that Mr. Kraft did make the statement in order to convince the Compensation Committee to award the change-in-control compensation and equity, you must next decide whether the Compensation Committee relied on the statement.

If you decide that the Compensation Committee did rely on Mr. Kraft's statement in awarding the change-in-control bonuses and equity, you must next decide whether the Compensation Committee was justified in relying on the statement. Whether a person is justified in relying on a statement depends on whether a reasonable person would have relied on the statement without further effort to determine the truth or accuracy of the statement. A member of any corporate committee designated by the board of directors is justified in relying in good faith upon information, reports, and statements presented by any of the corporation's officers or employees whom the member believes to be reliable and competent in the matters presented.

28

If you decide that the Compensation Committee was justified in relying on the statement, you must next decide whether The Arena Group sustained damages because its Compensation Committee relied on Mr. Kraft's statement.

If you decide that The Arena Group did not sustain any damage as a result of the fraud, you will find for Mr. Kraft on the claim of fraud. If you decide that The Arena Group did sustain damage as a result of the fraud, you must next decide the actual monetary loss sustained. In determining the amount of damages The Arena Group sustained, you should consider only the actual amounts that The Arena Group spent or incurred in reliance on Mr. Kraft's false statement.

### a. **Fraudulent Concealment Claim**

The Arena Group also seeks to recover fraud damages from Mr. Kraft under the theory of fraudulent concealment. Specifically, The Arena Group claims that Mr. Kraft withheld material facts from the Compensation Committee in order to induce the Compensation Committee to award additional compensation and benefits. Mr. Kraft denies that he committed fraud. The clear and convincing standard applies to this theory.

In order to recover for fraudulent concealment, The Arena Group must prove by clear and convincing evidence that: (1) Mr. Kraft failed to disclose that Bhargava had expressed to The Arena Group's CEO in August 2023 that he wanted The Arena Group to hold off on implementing any new change-in-control or retention compensation; (2) this conversation was not also known to the Compensation Committee and could not have been discovered by the Compensation Committee through the use of ordinary intelligence; (3) Mr. Kraft failed to disclose the conversation because he believed that the Compensation Committee would not award additional compensation if it knew Bharghava wanted The Arena Group to hold off on implementing any new change-in-control or retention compensation; (4) the Compensation Committee would not

29

have awarded additional compensation if it had known Bharghava wanted The Arena Group to hold off on implementing any new change-in-control or retention compensation; and (5) The Arena Group sustained damages because of Mr. Kraft's omission.  In determining whether The Arena Group sustained damages as a result of Mr. Kraft's omission and the amount of any such damages The Arena Group sustained, you should consider only the actual amounts that The Arena Group spent or incurred as a result of Mr. Kraft's omission.

### b.  **Mutual Mistake**

If you determine that the Compensation Committee was not induced by fraud or fraudulent concealment to award certain equity compensation during the November 2, 2023, Compensation Committee meeting, you must still determine whether the Compensation Committee acted under mutual mistake.

A party may rescind a contract on the ground of mutual mistake if the party proves by clear and convincing evidence that:

(1) both parties were independently mistaken as to a basic assumption regarding existing facts, upon which the party seeking to rescind relied in making the contract, and

(2) the mistake changed the bargain so much that the party seeking to rescind would not have entered into the contract if the party had been aware of the mistake.

The Arena Group contends that Mr. Kraft knowingly, recklessly, or—at the very least—mistakenly, made representations to the Compensation Committee to the effect that the company's buyer was aware of the equity compensation proposals that were brought to the Compensation Committee on November 2, 2023, knew everything about them, had discussed them with The Arena Group, and had approved them.  The Arena Group contends that its Compensation Committee did not know that these statements were false, and that it would not have agreed to

30

award the equity compensation if it had been aware of the mistake.  Mr. Kraft contends that he did not make these statements. He also contends that he was under the understanding that the company's buyer was aware of the equity compensation proposals and had approved them.

If you determine that Mr. Kraft and the Compensation Committee were both independently mistaken as to the fact of whether the company's buyer was aware of the equity compensation proposals, knew everything about them, had discussed them with The Arena Group, and/or had approved them, that is, if you determine that both Mr. Kraft and the Compensation Committee believed those facts, then you must next determine whether the mistake was significant enough that the Compensation Committee would not have agreed to award the equity compensation if it had been aware of the mistake.  If you find that both parties were mistaken as to the underlying facts of what the buyer knew, had discussed, or had approved, and that the Compensation Committee would not have awarded the equity compensation if it had been aware of the mistake, then you must find for The Arena Group on the issue of mutual mistake and you must not award Mr. Kraft any damages arising out of the rescinded equity compensation.

If you find that either party was not mistaken, or if you find that the mistake was not significant enough that the Compensation Committee would have withheld its approval for the equity compensation award, then you may award Mr. Kraft damages arising out of the equity compensation, if you find it is otherwise due to Mr. Kraft under his breach of contract claim.

## FINAL INSTRUCTIONS

### 1.  Right to See and Hear Exhibits and Testimony; Communications With Court

You are now about to go into the jury room to begin your deliberations.  Before you do that, I will give you a few final instructions.

31

The parties have prepared a set of exhibits for you.  Those exhibits will be available to you in the jury room.  If you want any testimony sent or read back to you, you may request that.  Any communication with the Court should be made in writing, signed by your foreperson, and given to the court security officer, whom, as in all cases, I will swear to ensure that your deliberations may take place uninterrupted.

Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can.  If you want an exhibit, please indicate the exhibit number or describe the exhibit. If you want testimony read back to you, please try to be as specific as you possibly can because the court reporter will have to look through the transcript, and the parties will have to agree on what portions of testimony may be called for in response to your request, and if they disagree, I must resolve those disagreements.  If you want any further explanation of the law as I have explained it to you, you may also request that from the Court.  If there is any doubt or question about the meaning of any part of the instructions that I have given you during this trial, you should not hesitate to send me a note asking for clarification or for a further explanation.

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching this case.  There is only one exception to this rule. If it becomes necessary during your deliberations to communicate with me—to request testimony, or to request clarification on the law—you should send a note to me, in writing, signed by your foreperson, and given to one of the court security officers or to my deputy, Mr. Fishman.  No member of the jury should ever attempt to communicate with me except by a signed writing, and I will never communicate with a member of the jury on any subject touching on the merits of the case other than in writing, or orally here in open court.  If you send any notes to the Court, do not disclose anything about your deliberations.  Specifically, do not disclose to anyone—not even to

me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

### 2. Notes

Many of you have taken notes periodically throughout this trial. You should not show your notes to, or discuss your notes with, any other jurors during your deliberations. Any notes you have taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.

I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

### 3. Verdict Form

You will now retire to decide the questions I have described to you.

This case will be decided on the basis of answers you give to written questions that will be submitted to you. Each of the questions calls for a "Yes" or "No" answer or some numerical figure. Each question will be followed by an instruction as to how you will proceed based upon your answer to that question. When you have answered all the questions that require answers unanimously, report to the court.

During deliberations, each juror is entitled to his or her opinion, but you are required to exchange views with your fellow jurors. This is the very essence of jury deliberation. It is your

duty to discuss the evidence.  If you have a point of view and after reasoning with other jurors it appears that your own judgment is open to question, then of course you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is really one that satisfies your judgment and conscience.  You are not to give up a point of view, however, that you conscientiously believe in simply because you are outnumbered or outweighed.  You should vote with the others only if you are convinced on the evidence, the facts, and the law that it is the correct way to decide the case.  You are not to discuss the case until all jurors are present.  Four or five jurors together is only a gathering of individuals.  Only when all the jurors are present do you constitute a jury, and only then may you deliberate.

### 4. **Selecting a Foreperson and the Foreperson's Duties**

The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson.  The foreperson will send out any notes, and when the jury has reached a verdict, he or she will notify the court security officer that the jury has reached a verdict, and when you come into open court, the foreperson will be asked to state what the verdict is.

### 5. **Verdict Form and Return of Verdict**

Once you have made your verdict, you will record your decisions in a verdict form which I have prepared for you.  You should also proceed through the questions in the order in which they are listed, following the instructions on that form.

Once you have completed the form, the foreperson should then fill in the verdict sheet and date it, and each of you should sign it.  The foreperson should then give a note to the court security officer outside your door stating that you have reached a verdict.  Do not specify what the verdict is in your note.

Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

## 6. **Oath**

I remind you that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law.  Your oath sums up your duty.  I know that you will do your duty and reach a just and true verdict.

## 7. **Exceptions**

I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like to have given to you or if there is anything I may not have covered.  In this regard, I ask you not to discuss the case while seated in the box because the case has not yet been formally submitted to you.

#          #          #

Members of the jury, that concludes my instructions to you.  You may now retire to the jury room and begin this phase of your deliberations.  As a first matter of business, please select a foreperson and send me a note, signed, dated, and timed, through the court security officer or my deputy, Mr. Fishman, telling me whom you have elected as your foreperson.