SMITH & DOWNEY

**ADAM M. MEEHAN**
Direct Number: (410) 321-9347
E-mail: ameehan@smithdowney.com

A PROFESSIONAL ASSOCIATION
320 E. TOWSONTOWN BLVD
SUITE 1 EAST
BALTIMORE, MARYLAND 21286
(410) 321-9000
FAX: (410) 321-6270
http://www.smithdowney.com

**Baltimore**
**New York**
**Charleston**
**Cincinnati**
**Palm Beach Gardens**

May 8, 2026

**VIA ECF**
Hon. Lewis J. Liman, U.S.D.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1620
New York, NY 10007-1312

> **Re:** **Andrew Q. Kraft v. The Arena Group Holdings Inc.**
> **Case No. 1:24-cv-02619-LJL**
> **Letter Motion Voicing Objections to Plaintiff's Proposed Judgment**

Dear Judge Liman:

Pursuant to Rule 1(C) of Your Honor's Individual Rules and Practices in Civil Cases, and the Court's directive on April 27, 2026, Defendant The Arena Group Holdings Inc. ("Defendant") respectfully submits this letter to object to three aspects of Plaintiff's Proposed Judgment (ECF No. 88) (the "Proposed Judgment").

**1. Paragraph Seven Calculates the Wrong Date for Pre-Judgment Interest of the Severance Payments**

**First**, paragraph seven of the Proposed Judgment sets the accrual date for pre-judgment interest on the severance component at January 19, 2024. That date assumes the entire $1,000,000 severance was due and payable as a lump sum close in time to the termination. The contract does not specify the exact timing, but the lump-sum assumption is contrary to the generally-accepted definition of the term "severance," industry practice, and Defendant's actual severance practice (of which Plaintiff, as COO overseeing HR, was well aware).

New York law governs the calculation of pre-judgment interest. *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008). Under CPLR 5001(b), interest "shall be computed from the earliest ascertainable date the cause of action existed," except that "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." Further, CPLR 5001(c) provides that "[t]he date from which interest is to be computed shall be specified in the verdict, report or

decision. If a jury is discharged without specifying the date, the court upon motion shall fix the date . . . .”

Here, it was established in the Verdict Sheet and the Jury Instructions that Plaintiff bore the burden of proving damages, including the timing of the damages. If Plaintiff intended to seek pre-judgment interest for a lump sum severance from on or about the date of termination, which is contrary to the generally accepted definition of severance, he was required to develop a trial record establishing that the severance was due in a lump sum upon date of termination. He did not do so, and the Verdict Sheet contains no such finding. The Employment Agreement does not support such a finding, but notably, conditions payment on the execution on a "standard form of release" (*See* Px-1, Section 1.3(c)(iv)), which would be the natural place to set forth timing details. In short, Plaintiff waived his right to such a favorable interpretation, particularly when it is contrary to generally-accepted principles of severance.

In contrast, Defendant did not have the obligation to make a timing showing at trial, and surely Defendant did not have an obligation to disprove a timing theory that Plaintiff never affirmatively put in issue. Still, now that Plaintiff has inserted a timing assumption into the Proposed Judgment after the trial, the question now moves from the jury to the Court. *See Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir. 1994). In doing so, the Court has discretion to consider information bearing on when the contemplated payments would have been made. *See Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90-91 (2d Cir. 1998). The Second Circuit has advised that courts generally have discretion when awarding interest, including in determining when interest begins to run. *See New England Ins. Co. v. Healthcare Underwriters Mutual Ins. Co.*, 352 F.3d 599, 602 (2d Cir. 2003).

To assist the Court in its determination,[1] Defendant respectfully requests leave of this Honorable Court to submit the attached Declaration of its Head of HR as <u>Exhibit A</u>. The Declaration does not seek to revisit any issue decided by the jury as the jury's findings on liability and total damages are not in question. The Declaration only seeks to assist the Court in selecting a reasonable intermediate date. To that end (and only that end), the Declaration seeks to show that Defendant's severance is paid on the regular payroll cycle over time, and in Mr. Kraft's case, such payments would have been made over 12 months. To the extent Plaintiff disputes any factual representation contained in the Declaration, Defendant stands ready to support its representations through such additional submission or hearing as the Court deems appropriate. While we believe the Court can resolve the accrual-date question on the contract language alone and the generally-accepted definition of severance, the Declaration serves as confirmatory context.

Based on the above, pre-judgment interest for the severance payment should run from no earlier than July 19, 2024, the middle point of twelve months of severance.

---

[1] When a contract is silent on a material term, the Second Circuit looks to industry custom and practice to ascertain the parties' intent. *Law Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458, 466-67 (2d Cir. 2010); *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, 773 F.3d 110, 113-14 (2d Cir. 2014). Extrinsic evidence of practice is properly considered. *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 123 (2d Cir. 2006).

**2. Paragraph 7 Incorrectly Calculates Pre-Judgment Interest from June 29, 2023 for Purposes of the Quarterly Bonuses**

**Second,** the Proposed Judgment incorrectly asserts that pre-judgment interest should run from June 29, 2023 for purposes of the quarterly bonuses. Similar to the above section, the Verdict Sheet contained no finding as to the timing of those bonuses, and Plaintiff failed to carry his burden of proof with respect to establishing such timing. As such, the issue is before the Court.

According to Plaintiff's own testimony, he "voluntarily deferred it [the bonuses]." Trial Transcript, p. 244 (April 22, 2026). Plaintiff should not be able to claim he voluntarily deferred bonuses (that he also testified were not in writing and had no specific timing parameters), and then also seek the benefit of pre-judgment interest under the guise that Defendant failed to pay the bonuses. Further, Plaintiff introduced no evidence that there was any agreed-upon interest while he "voluntarily deferred" the bonuses. Instead, the Employment Agreement contemplates that he would be paid any "earned bonuses" upon termination of employment. *See* Px-1, Section 1.3(c)(i). This is consistent with what the jury determined.

As such, Plaintiff's pre-judgment interest for the "earned bonuses" should run from no earlier than December 5, 2023, the date Plaintiff terminated employment.

**3. Paragraphs Nine and Ten Inappropriately Concoct a Judgment for Equity Awards**

**Third**, paragraphs nine and ten of the Proposed Judgment seek substantive relief including vesting and exercisability of stock options and RSUs, plus an additional 20,000 of each, that was never adjudicated. There is no jury verdict on this issue. There are no findings of fact or conclusions of law on this issue. A judgment under FRCP 58 memorializes adjudications that have occurred. It is not itself an adjudicative event.

**A. Plaintiff Failed to Designate Any Forum to Adjudicate the Equity Claim.**

In a case presenting both legal and equitable claims, the plaintiff bears an affirmative duty to designate, on the record, the forum in which each form of relief will be adjudicated. The Seventh Amendment and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959), prohibit a court from foreclosing the jury's adjudication of legal issues by deciding common factual questions in equity first. *Beacon Theatres* allocates decisional authority. It does not create a self-executing mechanism that delivers an unadjudicated claim from the jury's docket to the Court's. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545 (1990) (holding that legal claims must be determined prior to any final court determination of plaintiff's equitable claims).

Designation is the work of the Plaintiff. It could have been accomplished through the joint pretrial order (which under FRCP 16(d) "controls the course of the action") beyond just reciting the sought damages, through the proposed jury instructions and verdict sheet, through proposed findings of fact and conclusions of law under FRCP 52(a), or through a motion to set the equitable issue for separate adjudication. Plaintiff did none of these with respect to his claim for stock options and restricted stock units. The pretrial order does not identify the equity issue as one

Judge Liman
May 8, 2026
Page 4

reserved for bench adjudication. The verdict sheet does not reserve any factual finding tied to specific performance. No proposed findings or conclusions were submitted under FRCP 52(a). No motion was made to set the equity issue for separate proceedings before, during, or after the jury trial. Plaintiff simply put conclusions in the Proposed Judgment.

Where an issue raised by the pleadings or evidence is not submitted to the jury, the party must demand its submission before the jury retires; if no demand is made, "the court *may* make a finding on the issue." Fed. R. Civ. P. 49(a)(3) (emphasis added). The Court's authority is permissive, and it operates only on the litigant's request. Plaintiff neither demanded jury submission of the equity-vesting issue nor invoked the Court's authority to make findings on it. The issue went to no forum. That is forfeiture. *Webber v. Dash*, 607 F. Supp. 3d 407, 414-15 (S.D.N.Y. June 14, 2022) ("Having failed to object to the verdict form before the jury's deliberations, Defendants waived the objection they raise now concerning the verdict form's questions addressed to punitive damages.")

**B. The On-the-Record Carve-Out Did Not Designate a Forum.**

Plaintiff is expected to argue that the parties' monetary damages stipulation preserved the equity issue for the Court because it provided that "the foregoing numbers do not . . . limit Plaintiff's request for specific performance relating to equity." That language is a non-waiver clause, not a forum-designation clause. It says only that the parties agree that the numbers are not capturing any of, or limiting, those other issues which would be resolved separately. It does not say, and cannot fairly be read to say, that the Court would adjudicate the equity claim post-verdict on the existing trial record without further proceedings, without proposed findings, and without any opportunity for Defendant to develop a record on the elements of specific performance.

The stipulation, in fact, cuts against Plaintiff. The same document demonstrates that Plaintiff knew exactly how to designate a forum, identify a burden of proof, and frame the questions to be resolved. Indeed, with respect to the 2023 quarterly bonuses, the stipulation expressly provides that "the jury must determine whether Plaintiff has proven, by a preponderance of the evidence, that he is entitled to a bonus at all, and if so, the jury will then be charged with determining the amount of each such bonus to which Plaintiff is entitled." That is what designation looks like. It identifies the forum (the jury), the burden (preponderance), and the questions (entitlement and amount). No comparable language appears for equity. Plaintiff wrote only that the stipulated numbers would not "limit" his equity request, preserving the claim while not then, nor ever, designating anything about how, where, or when it would be adjudicated.

The other items carved out of the on-the-record stipulation confirm the point. Attorneys' fees were reserved by stipulation for resolution by the Court under FRCP 54(d)(2), as the Proposed Judgment itself acknowledges. Defendant's counterclaims were placed before the jury through the jury instructions and verdict sheet. The equity issue alone was sent nowhere. Plaintiff knew how to designate when he wanted to. Knowledge plus inaction is waiver.

**C. The Trial Record Cannot Support Specific Performance in Any Event.**

Judge Liman
May 8, 2026
Page 5

Even were the Court inclined to overlook the forum-designation failure, the trial record cannot support an award of specific performance. The remedy requires findings on (i) a valid contract, (ii) substantial performance by the plaintiff, (iii) the plaintiff's ability and willingness to perform, and (iv) the inadequacy of legal remedy. *EMF Gen. Contracting Corp. v. Bisbee*, 774 N.Y.S.2d 39, 44-45 (N.Y. App. Div. 1st Dep't 2004); *Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y.2d 409, 415 (2001). The jury's general verdict on the Employment Agreement does not subsume those findings. The jury was not asked, and did not answer, whether Plaintiff substantially performed all reciprocal obligations under an appropriate equity plan,[2] whether he is able to perform any obligations remaining under the Plan and the standard form of stock option agreement, or whether legal damages are inadequate.

Perhaps most obviously, on the inadequacy element, the relief Plaintiff seeks is publicly traded equity with a daily, market-quoted price. Where the equity at issue has a readily ascertainable market value, courts hold that legal damages are adequate and specific performance is foreclosed. *Sokoloff,* 96 N.Y.2d at 415; *Cho v. 401-403 57th St. Realty Corp.*, 752 N.Y.S.2d 55 (N.Y. App. Div. 1st Dep't 2002). A monetary award of the value of Plaintiff's previously forfeited awards would have been an adequate legal remedy, and the claim was therefore one required to be tried by the jury. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962); *see also* Trial Tr., pp. 302-03 (Apr. 22, 2026) ("the jury determines the amount of damages and that you would read that stipulation to the jury so that they know what to do"). Either way, whether the claim is viewed as a legal claim not submitted, or an equitable claim with an adequate legal remedy, the relief is unavailable.

Plaintiff may respond that the jury's contract-validity finding entitles him to specific performance as a matter of course, and that the Court can enter the requested relief from the bench without further proceedings. That argument conflates a legal conclusion (the existence of a valid contract) with the factual findings that specific performance independently requires. The jury's verdict does not establish that Plaintiff substantially performed his reciprocal obligations under the equity provisions of the contract, that he is presently able and willing to perform any obligations remaining going forward, or that the conditions precedent to vesting and exercisability, including qualifying-termination definitions, notice and release requirements, and restrictive covenants, have been satisfied. These are factual questions, not legal ones. They cannot be answered "consistent with the jury's verdict" because the jury did not answer them. They cannot be answered by the Court on the existing record because no evidence directed to them was offered at trial. Specific performance is not a clerical consequence of a contract verdict; it requires findings the jury did not make and that the existing record cannot support.

**D. The Additional 20,000 Options and 20,000 RSUs Are Unsupported by Any Finding or Record Evidence.**

---

[2] The Proposed Judgment references The Arena Group Holdings, Inc.'s 2022 Stock and Equity Compensation Plan as a governing document for certain options. This new reference as a governing document is telling in that it does not appear this document was referenced at all—or, if referenced, very limited—in the Proceedings. For example, the Complaint does not reference this 2022 Plan (although it does reference a 2019 plan); the Pre-Trial Order does not reference it; it is not in any of the Exhibits; etc.

Judge Liman
May 8, 2026
Page 6

The additional 20,000 options and 20,000 RSUs which Plaintiff seeks to insert into the judgment fare even worse. Presumably, Plaintiff appears to base the request on one of two instruments. The first is the "August 1, 2023 Agreement" (as used in the Verdict Sheet), which the jury found valid under Question 2A of the Verdict Sheet but which on its face does not guarantee any specific number of stock options or RSUs. The second is the November 2, 2023 Unanimous Written Consent, which also does not set any terms or make any guarantee (beyond a number), but the Verdict Sheet contains no question concerning that instrument at all. Its validity was not submitted to the jury, and Plaintiff submitted no proposed findings regarding it.

In short, the Verdict Sheet contains no question asking the jury to find that Plaintiff is entitled to 20,000 options, 20,000 RSUs, or any other remuneration that may or may not have been granted at the November 2, 2023 meeting. The jury was not asked. Plaintiff cannot now ask the Court to enter relief that turns on a finding the Verdict Sheet did not mention when it was crafted to the various points of relief that Plaintiff had readily identified and presented his case towards. Indeed, Plaintiff asks the Court to enter judgment on a quantity of equity supported only by an instrument the jury never validated, while citing as authority a different instrument that does not specify any guarantees. That is post-verdict claim expansion, not specific performance of an adjudicated contract.

## E. Defendant Is Prejudiced by Plaintiff's Procedural Failure That Cannot Be Cured.

The prejudice to Defendant is substantive and asymmetric. Whether Plaintiff's equity claim sounded in law or in equity is, at a minimum, a contested issue. Based on *Sokoloff* and *Cho,* the equity at issue (which are based on publicly traded shares, RSUs in a public company, and options with a calculable Black-Scholes value) has a readily ascertainable market value, legal damages are therefore adequate, and specific performance is foreclosed. That argument was never adjudicated, because Plaintiff never designated a forum in which it could be adjudicated.

This late introduction operates entirely against Defendant. If the Court concludes that equity is the proper remedy, Defendant has lost the opportunity to develop a record on the elements of specific performance. If the Court concludes that the proper remedy was a legal one, Plaintiff cannot now obtain it: the jury has been excused, and there is no factfinder available to value the forfeited options and RSUs. A court reluctant to leave Plaintiff without an avenue to pursue such a claim that he has not formally lost may, in that scenario, default to granting specific performance precisely because the legal alternative is no longer practically available. That outcome would reward Plaintiff for the very procedural failure that disabled the legal alternative in the first place. Defendant should not bear the consequences of a forfeiture it did not cause.

## F. The Court Should Strike Paragraphs Nine and Ten.

Defendant's primary submission is that paragraphs nine and ten should be stricken outright. The forfeiture is complete: Plaintiff did not designate a forum, did not demand jury submission, did not invoke the Court's authority under FRCP 49(a)(3), and did not put on evidence supporting the elements of specific performance. The trial record contains no findings on substantial performance, ability and willingness to perform, or the inadequacy of legal remedy, and as to the

additional 20,000 options and 20,000 RSUs, no findings on entitlement at all.  Had this issue been raised timely, the parties could have presented arguments as to whether the claim sought legal or equitable remedies, and if Defendant had prevailed, Plaintiff could have sought legal and monetary relief from the jury.

Should the Court conclude that some further proceeding is warranted before disposing of the equity claim, Defendant respectfully submits that the appropriate course is to strike paragraphs nine and ten and set the matter for a FRCP 52(a) bench proceeding.  At that proceeding, Plaintiff would bear the burden on each element of specific performance, including the inadequacy of legal damages in light of the daily market price of Defendant's common stock and the calculable value of the options.  Further, Defendant should be permitted to develop the record on any other conditions precedent and arguments as to why Plaintiff may not be entitled to the equity awards. Defendant respectfully request that it be afforded with these procedural protections of FRCP 52(a) before a FRCP 58 proposed judgment.

**Relief Requested.** Defendant respectfully requests that the Court (1) calculate pre-judgment interest on the severance component to run from July 19, 2024; (2) calculate pre-judgment interest on the quarterly bonuses to run from January 19, 2024; and (3) strike paragraphs nine and ten of the Proposed Judgment.  We have submitted a redlined Proposed Judgment as Exhibit B for your review and consideration reflecting these requests.

Very truly yours,

/s/ *Adam M. Meehan*

Adam M. Meehan
SMITH & DOWNEY, P.A.
320 E. Towsontown Blvd., Suite 1E
Baltimore, MD 21286
Phone: (410) 321-9347
Fax: (410) 321-6270
Email: ameehan@smithdowney.com
*Admitted Pro Hac Vice*

cc: All Counsel of Record via ECF electronic filing