USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_______________
DATE FILED: 07/10/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREW Q. KRAFT,

Plaintiff,

-v-

THE ARENA GROUP HOLDINGS INC., et al.,

Defendants.

24-cv-2619 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

The Court presumes familiarity with this matter. In brief, Plaintiff Andrew Kraft ("Plaintiff" or "Kraft") was an executive officer of Defendant The Arena Group ("Defendant" or "Arena"). He brought a breach of contract claim against his former employer following his termination in which he claimed that Arena failed to provide him the severance benefits to which he was entitled as an employee whose employment was terminated without cause. Dkt. No. 76-1. Arena counterclaimed against Kraft for breach of fiduciary duty and fraud arising out of his conduct in the final months of his employment. Dkt. No. 66-7. The parties tried the case in front of a jury beginning on April 21, 2026. The Jury found for Kraft on his breach of contract claim. It determined that Kraft had substantially performed the terms of his employment agreement; that he was not terminated for cause; that a subsequent amendment to his employment agreement was valid; and that he was entitled to a portion of the quarterly bonuses guaranteed in that amendment. Dkt. No. 87. The Jury found against Arena on its counterclaims. It determined that Arena had not proved that Plaintiff breached his duty of loyalty and care to the company; that he had not made any false statement of material fact; and that he had not breached his duty to disclose material facts to the compensation committee of Arena. *Id.*

Following the jury's verdict, Plaintiff submitted a proposed judgment on May 8, 2026. Dkt. No. 88. The proposed judgment reflects, pursuant to stipulation of the parties, that the damages due to Plaintiff on his breach of contract claim total $1,105,269.00, consisting of $500,000 in severance equal to his annual salary, $500,000 in severance equal to his annual bonus, $50,269 for COBRA reimbursement, and $27,500 for his Q1 quarterly bonus for 2023 and another $27,500 for his Q2 quarterly bonus for 2023. *Id.* at 1. In his proposed judgment, Plaintiff also seeks the award of prejudgment interest. With respect to the $1,000,000 in severance, he suggests that the interest should accrue beginning from January 19, 2024, which "reflects a reasonable period (*i.e.* 45 days) after the December 5, 2023 termination without Cause." Dkt. No. 91 at 2. He further suggests that the interest should accrue beginning on September 12, 2024 for the COBRA reimbursement, and from June 29, 2023 with respect to the quarterly bonuses. Dkt. No. 88 at 2. In his proposed Judgment, Kraft also asks the Court to order that Arena "take all necessary steps to cause all vested and unvested options to purchase shares of common stock of Defendant . . . that were held in Plaintiff's name as of December 4, 2023, plus an additional 20,000 Options, to be fully vested and exercisable for the remainder of the full term." *Id.* The proposed judgment contains a similar clause with respect to all unvested restricted stock units ("RSUs") "that were held in Plaintiff's name as of December 4, 2023, plus an additional 20,000 RSUs, to be fully vested and exercisable for the remainder of their full term." *Id.*

Defendant submitted a letter motion requesting leave to file objections to the proposed judgment on May 8, with its own proposed judgment attached. Dkt. No. 89. The Court granted leave to file the objections on May 30, 2026. Dkt. No. 90. Plaintiff opposed Defendant's

objections on June 8, 2026, Dkt. No. 91, to which Defendant replied on June 15, 2026, Dkt. No. 92.

**A. Accrual Date of Pre-Judgment Interest**

"In a diversity case," such as this one, "state law governs the award of prejudgment interest." *Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir. 2008). New York law provides that interest "shall be computed from the earliest ascertainable date the cause of action existed," except that "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." C.P.R.L. 5001(b); *see Foley v. Wilson*, 2020 WL 30338, at *5 (S.D.N.Y. Jan. 2, 2020). Further, C.P.L.R. Section 5001(c) provides that "[t]he date from which interest is to be computed shall be specified in the verdict, report or decision. If a jury is discharged without specifying the date, the court upon motion shall fix the date . . . ." C.P.R.L. 5001(c).

The jury in this proceeding was not asked to, and did not, determine a date from which prejudgment interest should accrue. As an element of the Plaintiff's case, the burden rests with Plaintiff to prove this element. *See Clayton Servs. LLC v. Sun West Mortg. Co.*, 2022 WL 427742, at *7 (D. Conn. Feb. 11, 2022) (applying New York law). Where no such finding was made, under New York law courts have "wide discretion in determining a reasonable date from which to award prejudgment interest." *Granite Ridge Energy, LLC v. Allianz Glob. Risk U.S. Ins. Co.*, 979 F. Supp. 2d 385, 393 (S.D.N.Y. 2013) (citing *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 512 (2d Cir. 1994)).

Defendant argues that the accrual date for pre-judgment interest on Kraft's $1,000,000 severance should not run from January 19, 2024, as proposed, but rather from July 19, 2024—the mid-point of a twelve-month severance period following Plaintiff's termination. Dkt. No. 89 at 1–2. Plaintiff responds that the January 19, 2024 date is appropriate because the contract does

not specify timing for the severance payment and that the contractual negotiations reveal that Plaintiff specifically bargained for the removal of a term that made his severance payable over time, rather than as a lump sum. Dkt. No. 91 at 1–2. Plaintiff's proposed accrual date necessarily assumes that the entirety of his severance was due to him upon his termination. That is unsupported by the facts of this case.

Plaintiff's employment agreement as entered into evidence in this case specifies that if he was terminated "without cause," as the Jury here found, his severance would be "paid as salary continuation." Dkt. No. 92-1 § 1.3(c)(i). The agreement itself therefore refutes Plaintiff's contention that his severance was due as a lump sum and supports instead the contrary proposition that it would be paid out over the course of the year as if it was his annual salary. In his argument to the contrary, Plaintiff points the Court to a draft version of his employment agreement that still has a mark-up in which one comment on the section about severance is that severance "should be a one-time payment, not salary continuation." Dkt. No. 91-2 at 5. Critically, however, that suggested change is not ultimately reflected in the employment agreement that was submitted by Plaintiff as Exhibit 1, which contains instead the language that the severance would be "paid as salary continuation." *See* Dkt. No. 92-1. Where "a contract is unambiguous," "a court should not look beyond its four corners to resolve the dispute." *Nemesis 2 LLC v. Paladino*, 2019 WL 6215386, at *7 (S.D.N.Y. Nov. 21, 2019) (citing *Kass v. Kass*, 696 N.E.2d 174, 180–81 (N.Y. 1998)). Because "the intent of the parties can be gleaned from the face of the instrument," the Court will not consider such external evidence of contract negotiations here. *Teitelbaum Holdings v. Gold*, 396 N.E.2d 1029, 1032 (N.Y. 1979).[1]

[1] To the extent there is any ambiguity in the contract as submitted by Plaintiff before the jury, Defendant has submitted a declaration of Amy Larkin, the current head of Human Resources at Arena, who testifies that "[e]xcept for de minimis amounts (less than one month's severance),

The Court therefore finds that July 19, 2024 serves as the appropriate mid-point of the year post-termination, for which severance was to be paid as a continuation of salary, from which to calculate prejudgment interest under New York law.

Defendant also argues that pre-judgment interest should run from December 5, 2023 for the quarterly bonuses, the date that Kraft was terminated, as opposed to the Plaintiff's proposed accrual date of June 29, 2023. Plaintiff "is agreeable to Arena's proposed interest accrual date of December 5, 2023." Dkt. No. 91 at 2. Accordingly, the Court finds that the date of December 5, 2023 is the appropriate date from which prejudgment interest shall accrue on the money owed from the unpaid quarterly bonuses.[2]

**B. Stock Options and RSUs**

In his proposed judgment, Plaintiff also seeks judgment that his vested and unvested stock options, plus an additional 20,000 options, be "vested and exercisable for the remainder of their term," and that his vested and unvested RSUs, plus an additional 20,000 RSUs, be "fully vested and exercisable for the remainder of their term." Dkt. No. 88 at 2. Plaintiff argues that he is entitled to judgment granting specific performance with respect to the options and RSUs because the jury determined that his termination was not for cause. Dkt. No. 78. Section 1.3(c)(iii) of his employment agreement states that upon termination without cause, "all outstanding unvested stock options, restricted stock awards, restricted stock units or stock appreciation rights granted to the Executive shall become fully vested and exercisable for the remainder of their full term." Dkt. No. 92-1 at 6.

---

Arena's long standing practice is to pay severance amounts as a form of salary continuation over time and not as a lump sum payment." Dkt. No. 89-1 ¶ 4.

[2] Defendant does not contest that accrual beginning on September 12, 2024 is appropriate for the COBRA reimbursement owed, as contemplated in Plaintiff's proposed judgment.

Plaintiff is not entitled to the specific performance sought in his proposed judgment. First, at no point in this proceeding did Plaintiff request that the Court reserve judgment on his equitable claims or otherwise request that the Court make a finding as to Plaintiff's entitlement to specific performance of the employment agreement. Plaintiff made no motion, did not submit any proposed findings of fact or conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure, and did not otherwise indicate to the Court the manner in which the findings should be made for the equitable relief requested. Nor did Plaintiff indicate an intention of seeking equitable relief following the jury trial in the pretrial order, in his proposed jury instructions, or through the proposed verdict sheet. *See Roberts v. Karimi*, 251 F.3d 404, 407 (2d Cir. 2001) (considering the plaintiff's "post-trial application for specific performance"); *Geller v. Markham*, 635 F.2s 1027, 1031 (2d Cir. 1980) (addressing the plaintiff's "post-trial motions" in which they "applied for equitable relief based upon the jury's verdict"). Instead, Plaintiff only submitted a proposed judgment that included his entitlement to that relief. Dkt. No. 88.

Plaintiff argues that he sufficiently designated this Court as the forum that would make the equitable determination at the pre-trial conference held on February 11, 2022. Dkt. No. 91 at 2. There, the Court and counsel for Plaintiff had the following colloquy:

> THE COURT: There is a request that the plaintiff has made for something like the return of options which strikes me as being in the form of equitable relief. Does plaintiff have a view as to whether that would be for the jury or for the Court, things other than the monetary damages for the alleged breach of contract.
>
> MR. FILOSA: I think if we are being principled, your Honor, since that is in the nature of specific performance or equitable relief, that branch of the award, to the extent that we get there, is a question for the Court not for the jury.
>
> THE COURT: What is defendant's position with respect to that?
>
> MS. MILLER: First of all, your Honor, I believe that they are underwater so it might not be too meaningful. However, I think that we could maybe work out something with plaintiff's counsel to try to reach an agreement on how to phrase it.

> THE COURT: Why don't you do that and we can discuss it on the first morning of trial[.]

Dkt. No. 91-3 at 19:2–20. Plaintiff did not, however, go on to raise the issue with the Court on the first day of trial, and did not otherwise make any motion or request for the Court to reserve judgment on the equitable claims, or submit any motion or proposed findings of fact with respect to them. Plaintiff therefore waived any argument that he is entitled to equitable relief. *See Kensu v. Buskirk*, 2016 WL 6465890, at *7 (E.D. Mich. Nov. 1, 2016) (finding that the plaintiff "waived his right to request equitable relief" where he did not "raise the issue . . . when questioned if there were any outstanding matters."); *Walker v. Anderson Elec. Connectors*, 944 F.2d 841, 844 (11th Cir. 1991) (affirming district court decision denying equitable relief where it was not sought in the pre-trial order because it "would be unfair to [defendant] to give [plaintiff] relief which [it] did not request; relief for which [the defendant] was never permitted to establish a defense."); *cf. Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 250 (E.D.N.Y. 2014) (finding that post-trial request for equitable relief was not waived where the plaintiff "included reinstatement as a requested form of relief in the Complaint, raised the issue at trial, there was no prejudice to Defendants at trial, the relief is equitable in nature, and the parties fully briefed the issue through post-trial motions.").

Second, and more importantly, the Court cannot, through entry of judgment, make the findings of fact necessary to entitle Plaintiff to the equitable relief that he seeks. Under Rule 52 of the Federal Rules of Civil Procedure, a court is required to make findings of fact and conclusions of law in "all actions tried upon the facts and without a jury." Fed. R. Civ. P. 52(a). That rule serves multiple important purposes, including: (1) aiding the appellate court "by affording it a clear understanding of the ground or basis of the decision of the trial court;" (2) making "definite precisely what is being decided by the case in order to apply the doctrines of

estoppel and res judicata in future cases"; (3) and "evok[ing] care on the part of the trial judge in ascertaining and applying the facts." 9C Wright & Miller, Federal Practice & Procedure § 2571 (3d ed. 2026); *see Reiter v. Metro. Transp. Auth. of N.Y.*, 2003 WL 22271223, at *11–15 (S.D.N.Y. Sept. 30, 2003) (where Plaintiff "received a favorable jury verdict" and then "submitted a request for equitable relief," the court made findings of fact pursuant to Rule 52(a)).

Here, Plaintiff seeks specific performance of his contract with Arena. "Under New York law . . . a party can be compelled to perform its contractual obligations if (1) there is valid contract; (2) plaintiff has substantially performed under the contract and is willing to perform its remaining obligations; (3) the defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law." *La Miranda Prods. Co. v. Wassall PLC*, 823 F. Supp. 138, 140 (S.D.N.Y. 1993). Specific performance is an "extraordinary remedy for which the requesting party must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice." *Barton Grp., Inc. v. NCR Corp.*, 796 F. Supp. 2d 473, 502 (S.D.N.Y. 2011), *aff'd*, 476 F. App'x 275 (2d Cir. 2012) (summary order). It "will not be ordered where money damages 'would be adequate to protect the expectation interests of the injured party.'" *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Am.*, 2006 WL 1493132, at *7 (S.D.N.Y. May 31, 2006) (quoting *Sokoloff v. Harriman Estates Dev. Corp.*, 754 N.E.2d 184, 188 (N.Y. 2001)).

Although the parties agreed that Kraft's employment agreement was a valid contract and the Jury found that Kraft "substantially performed all of the terms" of that Agreement,[3] Plaintiff's employment agreement does not state the value of unvested stock options to be

[3] That finding by the Jury "has the effect of precluding the court from deciding the same fact issue in a different way" when considering equitable relief. *Wade v. Orange Cty. Sheriff's Office*, 844 F.2d 951, 954 (2d Cir. 1988).

awarded Plaintiff in the event of a termination without Cause. The Jury additionally determined that the Amended & Restated Executive Employment Agreement dated August 1, 2023 was a valid agreement between the parties. Dkt. No. 87. But that agreement does not contain any reference to the value or quantity of unvested stocks or RSUs either.[4] Plaintiff did not offer evidence with respect to the value or number of unvested stock options or RSUs to which he would be entitled if he was terminated without Cause; accordingly, the jury did not make any findings of fact bearing on Kraft's entitlement to a specific value of vested or unvested stock options. Nor did the stipulation as to damages, agreed by the Parties, contain any reference to the amount of unvested stock options or RSUs. Rather, that stipulation noted only that it did not "limit Plaintiff's request for specific performance relating to equity." The Court has not, through motions or a bench trial, had any opportunity to make findings of fact bearing on that question.

In short, the jury verdict does not conclusively entitle Plaintiff to specific performance, and the Court has not made any post-trial findings establishing as much.[5] Therefore, the Ninth and Tenth paragraphs of Plaintiff's proposed judgment are not well-founded.

The Court will enter judgment in accordance with this Memorandum and Order.

SO ORDERED.

Dated: July 10, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge

[4] In his response to Defendant's opposition to Plaintiff's proposed judgment, Plaintiff also references Arena's Unanimous Written Consent dated November 2, 2023, PX18, as a basis for his entitlement to the stock options and RSUs. The jury made no findings with respect to that document and whether it was valid. *See* Dkt. No. 87.

[5] As Defendant points out, it is also not clear that where the relief sought is publicly traded equity, Plaintiff truly does not have an adequate remedy at law because there is a market value of that publicly traded equity. *See Alpha Capital Anstalt v. Shipftpixy, Inc.*, 432 F. Supp. 3d 326, 339 (S.D.N.Y. 2020).